## John Buchegger v. Rosa Shultz.

*Agreement to pay debt in gold, illegal.* — The law of Congress making treasury notes a legal tender in payment of private debts, was not designed to confer a personal privilege upon debtors, but is based upon principles of State policy; and an agreement between parties waiving its provisions, and requiring a debt to be paid in gold, is illegal and cannot be sustained.

Where, therefore, a person gave his note in 1862 for the sum of $800, providing that $500 of it should be paid in gold; and in a suit subsequently brought upon it, the plaintiff was permitted to show that gold was worth a premium of fifty per cent. in treasury notes, and judgment was rendered for an amount computed on that basis; it was *held*, that such judgment was erroneous, and should have been simply for $800 and interest.

*Heard May 9. Decided July 10.*

Error to Wayne Circuit.

The facts are stated in the opinion.

*J. Logan Chipman* for plaintiff in error.

*James D. Weir* and *Wm. Gray* for defendant in error.

COOLEY J.

Shultz sued Buchegger upon a note given in 1862 for the sum of eight hundred dollars, of which five hundred dollars was to be paid in gold. The Circuit Judge admitted evidence to show that the note was given for money loaned, five hundred dollars of which was in gold, and was agreed to be repaid in like money. He also allowed the plaintiff to show that at the time of the trial gold was worth a premium of fifty per cent. in treasury legal tender notes, and rendered judgment against the defendant, computed upon that basis.

The constitutionality of the Legal Tender Act (so called) is not disputed by counsel; but it is insisted that gold coin, though money, is also an article of traffic in which parties may deal as with other merchandise. And it is also urged that, regarding it as money merely, there is nothing in the law preventing the borrower from

stipulating for its re-payment in kind, and that when he does so he waives, by his contract, the privilege which the statute allows of payment in a depreciated currency, and becomes liable to pay such damages as the other party actually sustains.

As to the first point, it is to be observed that the contract before us is not for the delivery of gold, in bullion or by the ounce, or other quantity, but for the payment of so many *dollars*. It is plain that by it the parties have not undertaken to deal with the gold as *merchandise*, but as *money*. We recognize fully the fact that gold, as an article of traffic, has its value regulated by the supply and demand, and when dealt in as a metal simply, the laws respecting moneys and legal tenders do not affect the contracts. But when parties undertake to provide for the payment of their debts in money, their contracts are necessarily made subject to the laws of the country prescribing what is money, and also what shall be the legal equivalent for the specific payment which they may have promised. While, therefore, the considerations which have been urged can have no bearing upon this case, neither is the conclusion we have arrived at to be regarded as questioning the validity of such contracts for gold as we have alluded to.

And it seems to us difficult to press the second point with any force, without at the same time assailing the Legal Tender Act as unconstitutional. Before the passage of that act, all contracts for the payment of dollars generally were payable in gold and silver, because, by the statutes then in force, coin from those metals could alone be lawfully tendered in payment; and as parties are supposed to make their contracts in reference to the existing law, all prior contracts were to be construed precisely as if the words "payable in gold and silver coin" were incorporated therein. And if all such contracts may now be discharged by legal tender notes to the specified

amount, we are unable to see why a contract which includes this stipulation in its terms is not subject to be discharged in the same way.

The rules which govern this case seem to us few and simple. If legal tender laws were designed simply to confer upon debtors a privilege, there would be force in an argument that the class to be benefited might waive the privilege by stipulation in their contracts. But these laws are also based in great measure upon reasons of State policy, which sometimes, to a considerable degree, override and disregard individual interests. The act in question was based exclusively upon reasons of a public character, which, in the opinion of the law-making power, imperatively demanded that treasury notes should be made equal in legal value to coin, and parties have no more right to stipulate that their contracts shall not be governed by it, than those of a particular locality have to agree among themselves that this, or any other law passed by the competent authority, shall not be in force in such locality.

What shall constitute a dollar in money is fixed by national law, which, as respects this subject, is supreme. The Legal Tender Act not only made treasury notes money, but it made them a lawful tender for all private as well as most public debts. In doing so, it made these notes the legal equivalent for gold and silver coin to the same nominal amount. It is true that at the stock boards a difference is recognized, and that the holder of the coin may command a premium for it in notes; but this fact has no bearing upon the question when presented to the Courts, who must be governed by the law, if it has been enacted by competent authority. Moreover, gold and silver coin are seldom of equal value at the stock boards; and it is impossible for any law fixing a like legal value upon several species of money, to prevent fluctuations in their relative market

values, caused by circumstances which no legislation can control. But these circumstances do not authorize the Courts to recognize a distinction between gold and silver, or gold and treasury notes, when the paramount authority has declared their legal value shall be the same.

Assuming, now, that the stipulation for the payment of five hundred of the eight hundred dollars, in gold, is legally binding on the promissor, what is the measure of damages for a failure to fulfill the promise? The Courts have no power to render a judgment payable in one species of money only; and, therefore, a judgment rendered upon a note payable in gold cannot be made payable in gold only, but must be for the payment of so many dollars, without specifying the kind. But if it is to be for the payment of dollars generally, then it can be rendered only for the number of dollars mentioned in the note, and interest thereon, since one dollar is legally just as valuable as any other dollar. The legal damages for a failure to pay five hundred dollars *in gold* cannot possibly exceed five hundred dollars in any lawful currency; and when a Court renders judgment for any greater damages upon such a contract, it sets aside and disregards the Legal Tender Act altogether.

In the case before us, the Court has not only adjudged one dollar to be worth fifty per cent. more than another dollar, but it has assumed as the basis of its action that its judgment was payable in depreciated currency; whereas it is payable only in *lawful money*, whatever that may be. It is no more payable in treasury notes than in gold or silver; and although it may be reasonable to expect that the judgment debtor will pay in that which he can easiest command, there is no law which authorizes a Court to act upon that expectation in rendering its judgments. And whether the debtor will pay in one or the other will depend upon the law and the relative value, not when the judgment was rendered, but when

payment is made. Congress may at any time repeal the Legal Tender Act; and if it had done so the day after the rendition of this judgment, the defendant would have been liable to pay it in coin, at the rate of one dollar and fifty cents for each dollar of the coin borrowed, although the judgment was rendered as if there were a legal and fixed right to pay in notes. All contracts for the payment of money are subject to such change in the laws respecting the currency as may be made from time to time by the sovereign power; and the hardships which result are hardships from which Courts have no power to relieve.

The Court below erred in rendering judgment for more than the eight hundred dollars and interest. The judgment must be reversed, with costs, and a new trial ordered.

The other Justices concurred.