Pomeroy v. The State.

Filed March 8, 1884.

---

No. 11,151.

POMEROY v. THE STATE.

CRIMINAL LAW.—*Rape.*—*Force without Consent.*—Under section 1917, R. S. 1881, whoever unlawfully has carnal knowledge of a woman forcibly, against her will, is guilty of rape, and where, in such case, there is a carnal connection and no consent in fact, there is in the wrongful act itself all the *force* which the law demands as an element of the crime.

SAME.—*Conviction.*— *Sufficiency of Evidence.*—Where the evidence tends to prove that the prosecutrix " had been afflicted with epileptic fits since she was a year old, which came oftener and harder the older she got," that the defendant, as a physician, under the employment of her parents, made an examination of her person in the presence of her mother, and informed them that she had a terrible womb disease and was losing her mind, and that, as her physician, he afterwards obtained possession

and control of her person for the purpose of making a further examination of the alleged disease of the womb, and not for the purpose of sexual intercourse, and that by this means he unlawfully had carnal knowledge of the prosecutrix without her consent in fact, through fraud or otherwise, to the sexual connection, the judgment of conviction will not be reversed by the Supreme Court, on the ground of the insufficiency of the evidence to sustain the verdict, or because it is contrary to law.

From the Knox Circuit Court.

*J. S. Pritchett* and *H. Burns,* for appellant.

*F. T. Hord,* Attorney General, and *W. B. Hord,* for the State.

HOWK, C. J.—The appellant, Mark Pomeroy, was indicted in the Gibson Circuit Court, at its May term, 1882. The indictment charged " that Mark Pomeroy, on the 8th day of October, A. D. 1881, at and in the county of Gibson and State of Indiana, did then and there unlawfully, feloniously and violently make an assault in and upon one Rebecca R. Reavis, a woman then and there being, and did then and there unlawfully, feloniously, violently, forcibly and against her will, ravish and carnally know her, the said Rebecca R. Reavis, contrary to the form of the statute," etc.

On the appellant's application, the venue of the cause was changed to the court below; and, upon his plea of not guilty, the issues joined were there tried by a jury, and a verdict was returned finding him guilty as charged, and assessing his punishment at imprisonment in the State's prison for the term of ten years. His motion for a new trial having been overruled, and his exception saved to such ruling, the court rendered judgment against him, in accordance with the verdict.

In this court, the only error assigned by the appellant is the overruling of his motion for a new trial. In this motion, the following causes were assigned by appellant for such new trial:

" *First.* The verdict of the jury is contrary to law;

" *Second.* The verdict of the jury is contrary to the evidence;

" *Third.* The verdict of the jury is contrary to the law and the evidence;

"*Fourth.* Error of law occurring at the trial of the cause, in this, to wit: The court permitted and allowed Rebecca R. Reavis to be examined as a witness on behalf of the State, the said Rebecca R. Reavis being incompetent to testify, for want of mental capacity and imbecility, as a witness; and to the allowing of her being a witness and testifying, the defendant objected, but the court overruled the objection and permitted her to testify, and the defendant at the time excepted."

The record of this cause discloses the following facts: In October, 1881, James Reavis and his wife, Margaret, were living on a farm in the eastern part of Gibson county, in this State. Besides themselves, their family then consisted of their three daughters and two boys they were raising. Their daughter, Rebecca R. Reavis, was then twenty-two years of age, large and stout, " but had been afflicted with epileptic fits since she was a year old, which came oftener and harder the older she got." The natural tendency and effect of these oft-repeated fits of epilepsy were to produce what the appellant himself calls, in his motion for a new trial, her " want of mental capacity and imbecility."

On the 8th day of October, 1881, in the afternoon, the appellant, Mark Pomeroy, in company with one John Patterson, went to the farm-house of James and Margaret Reavis. The appellant was an itinerant doctor, " travelling from place to place," and was an utter stranger to the Reavis family. John Patterson was acquainted with James Reavis, having served in the army with him for a considerable time. Appellant engaged Patterson to drive his team for him over the country; and, on the day named, Patterson introduced the appellant to James Reavis. In a private interview then had with James and Margaret Reavis, the appellant said to them: " I am a physician and have heard about the affliction of your daughter. I have bought property at Oakland City, and am going to build a large hospital on it to treat cases like hers, and have already secured one young lady to treat, and have called to see about treating your daughter." Appellant was

then informed by Rebecca's parents that she had been under the treatment of a good many doctors, none of whom seemed to do her any good, and that their son, who was then attending a medical college at Cincinnati, had stated her case to the professors, and they said she could not be cured.

In response to this, appellant said: "Yes; but the physician is now come who will revive your drooping spirits, and cure your daughter; these doctors who treated her, and the college professors, didn't understand her case or know how to treat her, for want of experience; my father was a physician and I was in hospitals, and know all about such cases; I have with me four or five diplomas from medical colleges. I am not practicing my profession for the sake of making money, but only for the sake of suffering humanity; as I am already so rich that I could not spend my fortune in a lifetime unless I recklessly drank and gambled it away."

Appellant then asked to see Rebecca, and said, in the presence of her mother, he would have to examine her, and put his hand up under her clothes for that purpose. She objected to such an examination; but her mother told her that appellant said he could cure her, and that she must let him examine her. After the examination appellant declared that Rebecca had "a terrible womb disease, and was losing her mind." Her parents then employed appellant to cure her; and he and his driver stayed all night at Reavis' house. The next morning appellant took Rebecca into a private room, and, while pretending to make a further examination of her person, succeeded in having sexual intercourse with her. She made no outcry at the time, but after appellant had gone her mother found her crying, and she then complained to her mother that he, appellant, "had committed an outrage upon her." Shortly afterwards the appellant was arrested upon the charge for which he was indicted, tried and convicted in this case.

The bill of exceptions appearing in the record fails to show that the appellant objected or excepted, on any ground, to the competency of Rebecca R. Reavis, a witness for the State.

Therefore the only question presented for our decision is this, is the verdict of the jury sustained by sufficient legal evidence?

The offence of which the appellant was convicted in this case is defined and its punishment prescribed in section 1917, R. S. 1881. This section reads as follows:

"Whoever unlawfully has carnal knowledge of a woman forcibly against her will, * * * is guilty of rape, and, upon conviction thereof, shall be imprisoned in the State prison not more than twenty-one years nor less than five years."

On behalf of the appellant, it is earnestly insisted that the evidence wholly fails to show that he had carnal knowledge of Rebecca R. Reavis " forcibly against her will." Whether the carnal knowledge was had forcibly against her will or not, would seem to be a question of fact for the jury rather than of law. We are of opinion, however, that the jury were justified by the evidence in finding, as they must have done, under the instructions of the court, that the carnal knowledge was had forcibly and against the will of the prosecuting witness. The evidence wholly fails to show that Rebecca ever consented to, or even had knowledge of, the act of sexual intercourse, until after it was fully accomplished. In such a case the force required by the statute is in the wrongful act. Thus, in 2 Bishop Criminal Law (7th ed.), section 1120, it is said: " Whenever there is a carnal connection and no consent in fact, fraudulently obtained or otherwise, there is evidently, in the wrongful act itself, all the *force* which the law demands as an element of the crime."

The evidence tended to show that the appellant, as a physician, informed Rebecca and her mother that the former was suffering from a terrible womb disease, and was losing her mind. If the jury believed, as they might well have done under the evidence, that the appellant, as a physician, obtained possession and control of Rebecca's person, under her mother's command, for the purpose of making a further examination of her alleged disease of the womb, and not for the purpose of sexual intercourse, and that she never, in fact,

gave her consent, through fraud or otherwise, to the sexual connection, then, it seems to us, that the case in hand falls fairly within the doctrine declared in *Queen* v. *Flattery*, 2 L. R., Q. B. Div. 410, decided in 1877, and that the appellant was lawfully convicted of the crime of rape. In the case cited, as in this, the defendant professed to give medical and surgical advice for money. The prosecutrix, a girl of nineteen years, like the prosecutrix in this case, was " subject to fits," and she and her mother consulted the defendant in regard to her case, and informed him of her condition. The defendant, as in this case, made an examination of the person of the prosecutrix, and advised that a surgical operation be performed, and under the pretence of performing it had carnal connection with her. It was held by the court that the prisoner was guilty of rape. KELLY, C. B., said: " It is plain that the girl only submitted to the plaintiff's touching her person in consequence of the fraud and false pretences of the prisoner, and that the only thing she consented to was the performance of the surgical operation. Up to the time when she and the prisoner went into the room alone, it is clearly found on the case that the only thing contemplated either by the girl or her mother was the operation which had been advised; sexual connection was never thought of by either of them. And after she was in the room alone with the prisoner, what the case expressly states is that the girl made but feeble resistance, believing that she was being treated medically, and that what was taking place was a surgical operation. In other words, she submitted to a surgical operation and nothing else. It is said, however, that, having regard to the age of the prosecutrix, she must have known the nature of sexual connection. I know no ground in law for such a proposition. And, even if she had such knowledge, she might suppose that penetration was being effected with the hand or with an instrument. The case is therefore not within the authority of those cases which have decided,

decisions which I regret, that where a man by fraud induces a woman to submit to sexual connection, it is not rape."

In the same case MELLOR, J., also said: "I am of the same opinion. * * * It is said that submission is equivalent to consent, and that here there was submission. But submission to what? Not to carnal connection. The case is exactly within the words of WILDE, C. J., in *Reg.* v. *Case,* 1 Den. Cr. C., at p. 582: 'She consented to one thing, he did another materially different, on which she had been prevented by his fraud from exercising her judgment and will.'"

In *People* v. *Crosswell,* 13 Mich. 427, after citing some decisions, both in England and in this country, to the effect that if the woman's consent is obtained by fraud the crime of rape is not committed, COOLEY, J., said: "But there are some cases in this country to the contrary, and they seem to us to stand upon much the better reasons, and to be more in accordance with the general rules of criminal law: *People* v. *Metcalf,* 1 Whart. C. C. 378, and *note* 381; *State* v. *Shepard,* 7 Conn. 54. And in England, where a medical practitioner had knowledge of the person of a weak-minded patient, on pretence of medical treatment, the offence was held to be rape: *Regina* v. *Stanton,* 1 C. & K. 415; *Same Case,* 1 Den. C. C.—The outrage upon the woman, and the injury to society, is just as great in these cases as if actual force had been employed; and we have been unable to satisfy ourselves that the act can be said to be any less against the will of the woman when her consent is obtained by fraud, than when it is extorted by threats or force."

In the case at bar, we are of opinion that the verdict of the jury was fully sustained by the evidence appearing in the record, and that it was not contrary to, but in strict accordance with, the law applicable to such evidence. The court committed no error, therefore, in overruling appellant's motion for a new trial.

The judgment is affirmed, with costs.

Filed Dec. 20, 1883. Petition for a rehearing overruled March 6, 1884.