Eberhart *v*. The State.

Filed June 14, 1893.

---

No. 16,868.

## EBERHART *v*. THE STATE.

CRIMINAL LAW.—*Rape.—Verdict.—Evidence.—Resistance Offered.*—That the verdict is sustained by the evidence, see opinion.

SAME.—*Rape.—Resistance.—Instructions to Jury.*—In an action for rape, where the accused was charged of committing such crime upon the person of a child but little above the age of consent, who, that she might be cured of epilepsy, was placed in charge of the accused, who professed to cure by charms, the child being weak-minded and inexperienced, and for the purpose of treatment yielded herself implicitly to the accused, it was not error for the court to refuse to instruct the jury that "the prosecuting witness ought to have made an outcry that would have waked her parents up stairs."

DEPOSITION.—*Motion to Suppress.— When Rightly Sustained.—Criminal Law.*—A motion to suppress a deposition in a criminal case was rightly sustained, where the order of the court directed that such

deposition should be taken at a certain place, and the certificate of the notary shows that it was taken at another place, and the notice leaves it uncertain at which place it was to be taken.

WITNESS.—*Cross-Examination of.*—*When Permitted.*—A witness for the plaintiff can not be cross-examined after plaintiff's case is closed, without the consent of the plaintiff and of the court.

From the Clinton Circuit Court.

*W. R. Moore* and *W. H. Peter*, for appellant.

*A. G. Smith*, Attorney-General, *O. E. Brumbaugh* and *J. Combs*, Prosecuting Attorney, for the State.

HOWARD, J.—The appellant was indicted for the crime of rape, was tried therefor, and found and adjudged guilty.

It is conten'ed that the evidence does not sustain the verdict..

The prosecuting witness, Lettie G. Mohler, was thirteen years of age, past, and for two or three years had been subject to epileptic fits. Her father was a day laborer; while both father and mother were ignorant and credulous, to an extreme degree, though apparently well-minded persons. The girl herself had not gone to school since she had been afflicted with epilepsy, and had gone out nowhere except when accompanied by her father.

Appellant was a pretended traveling doctor, and about fifty years of age. He had traveled over parts of Illinois and Michigan, as well as in this State, professing to cure diseases by charms or spells, but not laying claim to any great medical knowledge.

The parents of the prosecuting witness were advised to make trial of his powers to relieve her of her malady, and called him in to treat her during one of his visits to the neighborhood. His first treatment was to take her to a private room and tie a string of woolen yarn around her person, charging her to tell no one what he had

done. She did not tell this to her mother, and the mother did not want to know what the doctor had done when she learned that he told the girl not to tell. This was in December, 1892. In January, and also in February, he came again, and the treatment was repeated. Before the February visit he wrote the following letter to the mother:

"PERTH, IND., Feb. 1, 1892.

"*Mrs. Mattie Mohler*—This night I received your letter, and would say it would be necessary for me to see her again and sleep in the same room with her now and then. You will see the change, for I make it a point to operate on these cases the third time after night, and, if possible, when the spell is on.

"It is possible that I may see you before Saturday night, and have a room to ourselves.

"Yours truly, LEWIS EBERHART.

"Try and get out of her what makes her cry. I am of a notion that her disease is a curse. Does she make any religious profession or not? Look for me, and ask her if she is very anxious to see me or not.

"I will use Latin phrases altogether on behalf of her.

"Yours, L. E."

The parents consented to this astounding proposition. The prosecuting witness slept in a small room down stairs on a couch, while the doctor slept in the same room on a bed. The rest of the family slept up stairs. On the fifth night that they so slept in the same room, he woke her up after she had been some time asleep and called her to his bed, saying he had something to tell her that would cure her of her fits. As soon as she reached his bed, she testifies, he pulled her in and committed the crime charged, she trying, as she says, "to make him quit, but he wouldn't do it."

Her mother and sister-in-law found evidence of the

truth of her statement, although at first she refused to tell; because, as she says, the doctor forbid her to say anything about it.

Appellant's counsel say that the crime is not proved because there was no outcry at the time, and there was concealment for a few days afterwards.

In *Anderson* v. *State*, 104 Ind. 467, it is said: "The nature and extent of resistance which ought reasonably to be expected in each particular case, must necessarily depend very much upon the peculiar circumstances attending it, and it is hence quite impracticable to lay down any rule upon that subject as applicable to all cases involving the necessity of showing a reasonable resistance. *Ledley* v. *State*, 4 Ind. 580; *Pomeroy* v. *State*, 94 Ind. 96; *Commonwealth* v. *McDonald*, 110 Mass. 405; 2 Bishop Crim. Law, section 1122."

In the case of *Ledley* v. *State, supra*, the court said: "What seemed  *  *  *  inconsistent in her conduct, might have been accounted for in the minds of the jury by that species of moral duress which the evidence tends to show that the prisoner exercised over her. She was young, only sixteen, and seemingly artless, wholly inexperienced, and by no means intelligent.  *  *  *  Under such circumstances his influence over her must have been great.  *  *  *  The jury saw the witnesses and the parties. They have come to a conclusion which, in our view of the case, is perhaps supported by the evidence.  *  *  *  Unless we respect such verdicts there would be little hope of bringing the guilty to punishment."

Bishop Crim. Law, *supra*, says: "Some of the cases, both old and modern, are quite too favorable to the ravishers of female virtue, and ought not to be followed, on this question of resistance.  *  *  *  The better judicial doctrine requires only that the case shall be one in which

the woman 'did not consent.' Her resistance must not be mere pretense, but in good faith.''

In *Huber* v. *State*, 126 Ind. 185, the court held that ''The rule does not require that the woman shall do more than her age, strength, and the attendant circumstances make it reasonable for her to do in order to manifest her opposition.''

*Pomeroy* v. *State*, 94 Ind. 96, was a case in many respects similar to that before us. In that case the prosecuting witness, who was twenty-one years of age, was afflicted with epileptic fits, and Pomeroy was an itinerant doctor, who said he could ·cure her, and in pretending to treat her as a physician accomplished her ruin. She, too, made no outcry at the time, but the court says: ''If the jury believed, as they might well have done under the evidence, that the appellant, as a physician, obtained possession and control of Rebecca's person, under her mother's command, * * * and that she never, in fact gave her consent, through fraud or otherwise, * * then it seems to us that the appellant was lawfully convicted of the crime of rape.'' *Queen* v. *Flattery*, 2 L. R. Q. B. Div. 410, referred to in the same opinion, was also similar to the case before us.

In the case at bar the prosecuting witness was a child, but little over the age of consent, as then fixed by law, and under such age as now fixed by our more humane statute. She was an epileptic, and had been so afflicted for about two years. In obedience to the direction of her parents, she was placed in the power of the charm doctor, who had wormed himself into her confidence, and into that of her almost equally feeble-minded parents. Her uncontradicted statement shows that she did not give her consent, and that she ''tried to make him quit, but he wouldn't.'' The appellant claimed to exercise great influence over her, and the evidence shows that she obeyed

him implicitly, as one who was to cure her of her malady. Weak in intellect and credulous as she was, both from disease and from heredity, and subjected for months to the will of her pretended physician, it is rather a matter of surprise that she offered any resistance to him. The crime committed by appellant was not only rape, as the jury found, but of a most aggravated character; and the jury would have been justified from the evidence in inflicting the most severe penalty.

The eighth instruction asked by appellant was properly refused by the court. We think it clear, from what has been already said, that a charge would have been improper which assumed that, under the circumstances, the prosecuting witness ought to have made an outcry that would have waked her parents up stairs. Nor do we think the evidence would justify that part of the instruction which assumed that appellant was received by the family on friendly terms, on one occasion after the commission of his crime. What we have said before applies also to this last feature of the instruction refused.

The motion to suppress the depositions of James Burke and others was properly sustained. The order of the court directing that such depositions should be taken provided that they should be taken at the town of Perth, Indiana, while the certificate of the notary shows that they were taken at the town of Carbon. The notice, as copied in the record, leaves it uncertain whether they should be taken at Perth or at Carbon.

Appellant also contends that he should have been allowed to call and cross-examine the prosecuting witness after the case of appellee had been closed. The court permitted appellant to make the prosecuting witness his witness for the purpose of eliciting any further evidence she might be able to give. This was all he was entitled to. Appellee's witnesses could not be cross-examined

after appellee's case was closed, without the consent of appellee and of the court.

We have found no available error in the record.

The judgment is affirmed.

Filed June 13, 1893.