# REPORTS OF CASES

### DETERMINED BY

# THE SUPREME COURT

#### OF THE

# STATE OF NEVADA

### APRIL TERM, 1918

[No. 2315]

## THE STATE OF NEVADA, RESPONDENT, *v.* AL. SNYDER, APPELLANT.

### [172 Pac. 364]

1. ROBBERY—ADMINISTRATION OF POISON—STATUTE—"FORCE."
   Where defendant administered poison to produce unconsciousness and took money from cash register in saloon of which unconscious person had charge, he was guilty of "robbery," defined by statute to be unlawful taking of personal property from person of another or in his presence against his will by means of force or violence or fear of injury, since the administration of the poison constituted "force."

2. ROBBERY—POISON—SUFFICIENCY OF EVIDENCE.
   In a prosecution for robbery by administering chloral hydrate to produce unconsciousness, evidence *held* not to show that the condition in which the person robbed was found could not have been so caused.

3. ROBBERY—SUFFICIENCY OF EVIDENCE.
   In a prosecution for robbery by administering chloral hydrate to render unconscious the barkeeper whose cash register was robbed, evidence connecting defendant with the crime, alleged to have been committed by himself and two others, *held* to sustain conviction.

APPEAL from Second Judicial District Court, Washoe County; *E. J. L. Taber*, Judge.

Al. Snyder was convicted of robbery, and appeals. **Affirmed.**

*Withers & Withers,* for Appellant:

The court erred in refusing to advise the jury to bring in a verdict acquitting the defendant, when requested so to do. There was no proof that chloral had been administered; and if in fact it had been administered, there was no proof that the defendant had been in any way connected with such administration. The possession of chloral hydrate and opportunity of administering it are of themselves no evidence to support the crime of robbery. The state must show, or at least introduce evidence tending to prove, that the victim was actually suffering from this specific drug. The state had it in its power to make all necessary tests.

Even though the court may find the evidence sufficient to show the administration of chloral—the only force alleged—that finding would embrace two distinct presumptions, which would be based on two grounds, each supported merely by circumstantial evidence. First, the presumption that chloral was actually used, and, second, that it was used in such quantity, quality and conditions that it caused insensibility in the victim. Even should this finding be had, there can be no conviction, because the court will not uphold the still further presumption that because this defendant was present at the time of the robbery he presumably was connected with it, and presumably helped in the presumed administration of chloral which presumably might have caused death. A complete chain of circumstances must be proven. (*Horgan v. Indart,* 41 Nev. 228, 168 Pac. 953.)

The administration of chloral does not constitute the force and violence required under our statute defining robbery. There is no evidence of fear in the case. Force is an essential element of the crime of robbery. By "force and violence" is meant the physical application of force; physical and muscular effort that will overcome the resistance of the victim. (24 Am. & Eng. Ency. Law, 992; *Nelson v. State,* 145 Pac. 315; 2 Bishop, Crim. Law, 7th ed. 1166; 34 Cyc. 1796; Wharton, Crim. Law, 3d ed.; *Brown v. Comm.,* 13 Am. St. Rep. 478; *State v. McCune,* 70

Am. Dec. 178; *Reynolds* v. *State*, 132 Pac. 434; *Monaghan* v. *State*, 134 Pac. 77.)

It has been decided by this court in numerous cases that the judgment will be reversed and the verdict of guilty set aside if there is not sufficient evidence to support it, and that in order that the evidence be sufficient there must be a substantial conflict. There is no substantial conflict in this case. (*State* v. *V. & T. Ry. Co.*, 23 Nev. 283; *Horgan* v. *Indart*, 168 Pac. 953; *State* v. *Thompson*, 101 Pac. 557; *State* v. *Whitaker*, 39 Nev. 159.)

*Geo. B. Thatcher*, Attorney-General, *E. T. Patrick*, Deputy Attorney-General, *William McKnight*, Deputy Attorney-General, and *E. F. Lunsford*, District Attorney, for Respondent:

The administering of drugs and poisons constitutes assault and battery. (2 R. C. L. 539.) "It has always been regarded as permissible to charge the administering of poison as an assault, and the same reasoning applies to the application of injurious drugs." (2 Wharton, Crim. Law, sec. 1246.) The administering of croton oil was held to constitute assault and battery. (*State* v. *Monroe*, 43 L. R. A. 861.) "A man may be said to take by violence who deprived the other of the power of resistance by whatever means he did it." (Russell on Crimes, 2d ed. vol. 1; *Commonwealth* v. *Stratton*, 19 Am. Rep. 350.)

It has been decided in numerous cases that if there is any evidence tending to support the verdict this court will not reverse the case. (*State* v. *McGinnis*, 6 Nev. 109; *State* v. *Glovery*, 10 Nev. 24; *State* v. *Huff*, 11 Nev. 17; *State* v. *Raymond*, 12 Nev. 98; *State* v. *Crozier*, 12 Nev. 300; *State* v. *Mills*, 12 Nev. 403; *State* v. *Wong*, 22 Nev. 336; *State* v. *Buralli*, 27 Nev. 41; *State* v. *Preston*, 30 Nev. 301; *State* v. *Thompson*, 31 Nev. 209; *State* v. *Whitaker*, 39 Nev. 159.) "The rule is that judgments will be reversed for alleged errors in instructions only when, looking at the testimony, we can see that the jury may have been misled by them to the prejudice of the

defendant, or when, in the absence of testimony, it is apparent that the instructions would be improper under any possible condition of the evidence." (*State* v. *Loveless,* 17 Nev. 424; *People* v. *Donahue,* 45 Cal. 322; *People* v. *Strong,* 46 Cal. 303.)

By the Court, COLEMAN, J.:

Appellant was convicted of the crime of robbery, and appeals.

"Robbery" is defined by our statute to be:

"The unlawful taking of personal property from the person of another, or in his presence, against his will, by means of force or violence or fear of injury, immediate or future, to his person or property; * * * the degree of force is immaterial." (Rev. Laws, 6427.)

The state did not contend upon the trial that appellant used actual force in perpetrating the crime, but constructive force, in that he administered poison to one Cooper with the intention of producing unconsciousness, and while Cooper was in that condition took money from a cash register in the saloon of which the latter had charge.

Appellant contends that under our statute defining "robbery" there can be no such thing as constructive force. Force was an essential element in both robbery and rape at common law, and is so by statute, except in rape where carnal knowledge is had of a female under the age of consent; but it has been held in this state, in England, and in some of the other states, that the force used in perpetrating the crime of rape may be constructive as well as actual. In the case of *Queen* v. *Camplin,* 1 Cox, Crim. Law Cas. 220, 1 Car. & K. 746, 1 Denison, Crim. Cas. 89, wherein the defendant gave a young girl liquor for the purpose of exciting her passions, and not with the intention of causing intoxication, but from which she became intoxicated, and while she was in that condition and insensible he had carnal intercourse with her, the court said that:

"The case therefore falls within the description of

those cases in which force and violence constitute the crime, but in which fraud is held to supply the want of both."

In *Lewis* v. *State*, 30 Ala. 54, 68 Am. Dec. 113, it was said:

"It is settled by a chain of adjudication, too long and unbroken to be now shaken, that force is a necessary ingredient in the crime of rape. (Bishop's Crim. Law, sec. 411.) The only relaxation of this rule is that this force may be constructive. Under this relaxation, it has been held that where a female was an idiot, or had been rendered insensible by the use of drugs or intoxicating drinks, and, in one case, where she was under the age of ten years, she was incapable of consenting, and the law implied force. (*Rex* v. *Ryan,* 2 Cox's C. C. 115; *Commonwealth* v. *Fields,* 4 Leigh, Va. 649; *State* v. *Shepard,* 7 Conn. 54; *Regina* v. *Camplin,* 1 Car. & Kir. 746; Bishop's Cr. Law, sec. 343.)"

In *Pomeroy* v. *State,* 94 Ind. 96, 48 Am. Rep. 146, wherein the defendant had been convicted of rape, the court said:

"In *People* v. *Croswell* [*Crosswell* v. *People*] 13 Mich. 427, 87 Am. Dec. 774, after citing some decisions, both in England and in this country, to the effect that if the woman's consent is obtained by fraud the crime of rape is not committed, Cooley, J., said: 'But there are some cases in this country to the contrary, and they seem to us to stand upon much the better reasons, and to be more in accordance with the general rules of criminal law. (*People* v. *Metcalf,* 1 Whart. C. C. 378, and note 381; *State* v. *Shepard,* 7 Conn. 54.) And in England, where a medical practitioner had knowledge of the person of a weak-minded patient, on pretense of medical treatment, the offense was held to be rape. (*Regina* v. *Stanton,* 1 C. & K. 415, 1 Den. C. C.) The outrage upon the woman, and the injury to society, is just as great in these cases as if actual force had been employed; and we have been unable to satisfy ourselves that the act can be said to be any less against the will of the woman

when her consent is obtained by fraud than when it is extorted by threats or force.' "

In another rape case the Supreme Court of Wisconsin says:

"Under such circumstances, the assault with intent to commit rape is complete, and we find no objection to the instruction because it did not require that some additional force must be employed by the assailant to that involved constructively in the acts of giving her the liquor with these intents in his mind. There is no dispute but that he took the actual steps of giving her the liquor, and, since the jury found this was done with the criminal intent charged, the essentials of the offense are present. (*State* v. *Lung,* 21 Nev. 209, 28 Pac. 235, 37 Am. St. Rep. 505.)" (*Quinn* v. *State,* 153 Wis. 573, 142 N. W. 510, 46 L. R. A. n. s. 422.)

This court, in considering a case wherein the defendant was convicted of an attempt to commit rape, after reviewing the authorities wherein it had been held that the force necessary to constitute rape might be constructive, said:

"As an attempt to commit a crime can only be made under circumstances which, had the attempt succeeded, would have constituted the entire substantive offense (1 Bish. Crim. Law, secs. 731, 736; *State* v. *Brooks,* 76 N. C. 1), the result which we gather from these principles is that, for a man to be guilty of the crime of an attempt to commit rape, he must have intended to use the force necessary to accomplish his purpose, notwithstanding the woman's resistance, or, in the case of constructive force, to either destroy her power to resist him by the administration of liquors or drugs, or to take advantage of the fact that she was already in a condition in which either the mental or physical ability to resist is wanting." (*State* v. *Lung,* 21 Nev. 209, 28 Pac. 235, 37 Am. St. Rep. 505.)

It will be seen that the court, in the last-mentioned case, held that one of two things would constitute constructive force, namely (a) the destroying of the

Opinion of the Court—Coleman, J.

w.oman's power of resistance by administering liquors or drugs, or (b) the taking advantage of the fact that the woman was already in the condition in which the mental or physical ability to resist was wanting.

See, also, *Hirdes* v. *Cross, Ottawa Circuit Judge,* 174 Mich. 321, 146 N. W. 646, 52 L. R. A. n. s. 373; *Rahke* v. *State,* 168 Ind. 615, 81 N. E. 584.

1. We are unable to see why a different rule should be established in a case wherein robbery is charged and in which force is an essential element, than in a case wherein rape is the charge, wherein force is likewise an essential element. If constructive force may be used in the one case, why not in the other? No satisfactory reason has been advanced why a different rule should exist, and we are unable to think of one worthy to be mentioned, and are therefore of the opinion that the trial court did not err in holding that constructive force was resorted to by appellant.

2. It is also contended in behalf of appellant that the evidence of the doctors shows that the condition in which Cooper was found could not have been caused by chloral hydrate, as contended by the state, for the reason that the witness Cooper testified that almost immediately upon drinking the beer testified to he became unconscious, because, as contended, chloral hydrate does not produce the condition of unconsciousness in which Cooper was found in less than thirty minutes, unless a dose is taken which will cause certain death. While one of the witnesses testified flatly that chloral hydrate would not produce unconsciousness in less than thirty minutes, Dr. Kistler, who had been called to attend Cooper, did not so testify; and, while his testimony was somewhat uncertain, he did state:

"At the time that I was called to treat the man, I supposed he was suffering from chloral poisoning. I have the same opinion now."

From an examination of the works of text-writers, it is apparent that what may be a medicinal dose for one person is a poisonous dose for another. In some

instances a dose of thirty grains has proven fatal, while in other cases more than an ounce has been taken without ill effect. (Reese, Med. Juris. & Tox., 8th ed. 573; Herold's Man. of Legal Medicine, p. 105.)

Taylor, in his Principles of Medical Jurisprudence, vol. 1, p. 387, speaking of this drug, says:

" It has been given in very large doses, sometimes with benefit, but at other times causing dangerous symptoms, followed by death.  *  *  *   A patient under Dr. Habershon at Guy's took half a drachm (30 grains) of the hydrate at night. He became unconscious almost immediately after swallowing the draught—the face and hands turned livid and cold, and breathing took place only at long intervals, indeed for about five hours death seemed impending. He recovered the next day. (Lancet, 1870, 2, 402.) A case is reported in the same journal in which a dose of 160 grains was given by mistake to an hospital patient, a middle-aged man. The man slept well and recovered, notwithstanding the large dose taken."

We do not think the contention of appellant can be sustained.

3. It is also contended that the evidence is not sufficient to connect appellant with the crime. The defendant was jointly charged with Pat Bond and Sherman Owensby with the crime of which he was convicted, but upon application he was granted a separate trial. The testimony on the part of the defense shows that on the evening of June 26, 1917, the defendant first met Pat Bond in Reno, and together they visited several saloons; that on the following morning Owensby, who was then unknown to appellant, arrived from Sacramento and met Bond, whom he had known in Southern California; that later they were met by appellant, after which they visited several saloons together. Shortly after noon of that day they all took the same street-car for Sparks, though, as they testified, appellant did not know that Bond and Owensby were on the car, nor did they know that appellant was aboard. The car passed through the

town, and when it reached the end of the line they all got off; Bond and Owensby going to the Rio Vista saloon, followed by appellant.  They had several drinks, after which a lunch was ordered and served by Cooper, the bartender, on a table in the saloon.  Cooper was invited to join the party and got for himself a pint of beer, which he opened and placed on the table at which the lunch was served.  He then went to the kitchen for a moment, and upon his return began to drink the beer, and soon became unconscious.  While he was in this condition Bond went to the cash register and took therefrom some money.  Appellant testified that when Bond went to the cash register he became scared and went outside of the saloon and stopped on the sidewalk, and while standing there was passed by the other two men, who ran up the street.  Appellant then walked some distance from the saloon, turned around, and, as he claimed, was on his way to the depot to take the train for Lovelock and while walking past the saloon was arrested. Chloral hydrate was found in the possession of the other two men; and, while none was found in the possession of appellant, a day or two after his arrest two small vials of the drug were found about seventy-five feet from where appellant had been arrested.  It further appeared that it was impossible for the other two men to have been at the point at which the vials mentioned were found between the time of their arrival in Sparks and the arrest.

The appellant at no time sought to render any assistance to Cooper or to notify any one of his condition. In view of this chain of circumstances, would this court be justified in setting aside the verdict of the jury? This court, in determining the sufficiency of circumstantial evidence, has said:

"If the circumstances, all taken together, exclude to a moral certainty every hypothesis but the single one of guilt, and establish that one beyond a reasonable doubt, they are sufficient." (*State* v. *Mandich,* 24 Nev. 336, 54 Pac. 516.)

Having held that the testimony of Dr. Kistler, who was called to attend Cooper, to the effect that it was his opinion that Cooper's unsciousness was caused by a dose of chloral hydrate, was sufficient to justify a conclusion on the part of the jury that Cooper's condition was due to a dose of that medicine, let us, in the light of the rule just enunciated, ascertain if the circumstantial evidence in the case is strong enough to warrant the jury in concluding that appellant was a party to its administration to Cooper. If appellant was not a party to the crime, he is the victim of a most remarkable chain of circumstances. Appellant's association with Bond on the night of June 26 might have been a mere chance affair; his meeting Owensby the next morning, shortly after his arrival from Sacramento, may have had no significance; his going to Sparks on the same car might have been a mere coincidence, but his riding through the town of Sparks to the end of the car line, as did Bond and Owensby, is a very suspicious circumstance; his following Bond and Owensby into the Rio Vista saloon would not necessarily signify anything; his drinking with them might have been merely the result of a desire to quench his thirst; his partaking of lunch with them might have signified nothing more than a desire to be sociable; the two vials of chloral hydrate may have been lost by some one else—but to what could appellant's failure to call for help when Cooper became unconscious have been due? If he was blameless, why did he merely walk out of the saloon and stand on the sidewalk, when the cash register was being robbed, without giving an alarm? In our opinion, while none of the circumstances mentioned, considered alone, necessarily signifies anything, it could hardly be possible for a chain of circumstances such as those mentioned to have existed by mere chance, and we are of the opinion that they were sufficient to justify the jury in bringing in a verdict of guilty.

It is ordered that the judgment be affirmed.

SANDERS, J.: I concur.

McCARRAN, C. J., concurring:

I concur.

In my judgment the very language of our statute opens the door to the reason and admits the rule which recognizes constructive force. By the statute it is declared that:

"Robbery is the unlawful taking of personal property from the person of another, or in his presence, against his will, by means of force or violence or fear of injury * * * to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial." (Rev. Laws, 6427.)

The agency of constructive force is recognized by authorities without number, where this agency has appeared in the perpetration of the crime of rape. In such crimes, the administering of liquor or drugs to an extent sufficient to destroy the power of resistance is declared to meet the law's contemplation of force. (*People* v. *Espanol*, 16 Porto Rico Rep. 203; *State* v. *Warren*, 232 Mo. 185, 134 S. W. 522, Ann. Cas. 1912B, 1043.)

In considering the subject, Mr. Wharton, referring to the crime of robbery, recognizes constructive force as sufficient to satisfy the law's requirement. (1 Wharton's Law of Crimes, 10th ed. ·p. 744, sec. 850.)

The reason which gave rise to the recognition of constructive force in cases of rape is equally cogent in furtherance of a relaxation of the rule as to the element of force in the crime of robbery to the extent that the necessary ingredient in that respect may be only constructive. "Force" is the power or energy by which resistance is overcome. In the crime of robbery "the degree is immaterial," says the statute. When, to take the personal effects of another, a blow is struck with a bludgeon, thereby paralyzing the victim's power of resistance, the taking will constitute robbery. The same effect might be produced on the victim by the physical act of administering a deadly potion. In either case

resistance is involuntarily overcome. Great physical strength might be required to accomplish the result in the first instance, while a mere turning of the hand might effect the consequence in the second; force, however, is present in both. The agency through which the force operates is immaterial. The result in either case is the overcoming of resistance without the voluntary cooperation of the subject whose resistance is repressed; this is the test.

In the case at bar, resistance was overcome by force which operated through the agency of chloral hydrate, administered to the party in charge of the saloon. Destruction of the power of resistance was accomplished by the act of the defendant, operating through the force and efficacy of the poison. A blow with a "billy" might have produced this same result. To say that the one method would have been less forceful than the other in bringing about the consequence is but to conjure with comparison.