[No. 2315A]

.THE STATE OF NEVADA, RESPONDENT, *v.* PAT
BOND AND SHERMAN OWENSBY, APPELLANTS.

[172 Pac. 367]

1. CRIMINAL LAW—APPEAL—HARMLESS ERROR—INSTRUCTION.

Where the information charging robbery did not allege the
use of chloral hydrate or any drug to render unconscious the
person robbed, but alleged the robbery was committed by force
and violence, and the evidence showed that, while much chloral
hydrate was found on defendants, some was in solution, and
in one bottle a foreign substance, as sugar or digitalis, had been
mixed with chloral hydrate, defendants were not prejudiced by
an instruction that the state must prove beyond a reasonable
doubt that a drug was actually administered to the person
robbed, etc., instead of their request using the phrase "such
chloral hydrate," instead of the phrase "a drug."

APPEAL from Second Judicial District Court, Washoe
County; *E. J. L. Taber,* Judge.

Pat Bond and Sherman Owensby were convicted of
robbery, and they appeal.   **Affirmed.**

*Withers & Withers,* for Appellants:

The court erred in instructing the jury that the giving
of drugs or poison constitutes the force or violence neces-
sary to support a charge of robbery as defined by our
statute, and in instructing that they might find the insen-
sible condition of Cooper to have been due to the admin-
istration of any drug or poison other than chloral hydrate,
which was the only drug testified to have been in the pos-
session of the defendants.   The case for the state was
based upon the hypothesis that chloral hydrate only had
been administered, and there was no evidence whatsoever
that the defendants had any other drug in their posses-
sion, or had had the opportunity to administer any other
drug, or that the victim's condition could have been
caused by any other drug.

There is no competent evidence to show that Cooper
was actually suffering from chloral poisoning, but the
evidence distinctly shows that in every way chloral would
have caused directly opposite symptoms.   Therefore, the
verdict of the jury should be set aside, on the ground

that there was no competent evidence to show that chloral was actually administered.

*Geo. B. Thatcher*, Attorney-General, *E. T. Patrick*, Deputy Attorney-General, *William McKnight*, Deputy Attorney-General, and *E. S. Lunsford*, District Attorney, for Respondent:

The expert witnesses did not seem to agree as to the effect which the administration of chloral should have produced upon the victim of the robbery. It can make little difference in law whether he was rendered unconscious by pure chloral or by chloral mixed with some other poison. Medical writers do not agree with some of the expert testimony offered at the trial. (1 Hamilton, Medicine, 469; Taylor, Medical Juris. 208; Reese, Medical Juris. 572; Herold, Manual of Legal Med. 104; Holland, Med. Chem. & Tox. 384.)

It is difficult to understand why the facts of this case do not bring it squarely within the definition of robbery. The poison administered to Cooper was certainly for the purpose of obtaining possession of his property and to prevent or overcome resistance to the taking. "Experience has shown the most common abuse of poison to consist in its application as an auxiliary to the commission of other crimes. And it is wonderfully adapted to the nefarious purpose. Easily disguised in most kinds of food, capable of producing effects through small quantities, subtle and overpowering in its operation, it may be administered with ease and secrecy, and accomplish every villainous purpose, from producing sleep and stupor to insanity and paralysis and death; and there are no agencies more difficult to detect." (*People* v. *Carmichael*, 5 Mich. 20.)

By the Court, COLEMAN, J.:

The facts in this case are substantially the same as those in the case of *State* v. *Al. Snyder*, 41 Nev. 453, 172 Pac. 364, this day decided. The only question which we deem it necessary to consider is that raised by the

assignment of error based upon the action of the court in refusing to give, without modification, instruction D2, which reads as follows:

"You are further instructed that although you may find from the evidence that the defendants, or either of them, may have had in his possession chloral hydrate and may have had the opportunity to use the same, such facts alone are insufficient to convict the defendants of the offense charged, to wit, robbery; but the state must prove beyond a reasonable doubt that *such chloral hydrate* was actually administered to the said Cooper and was actually taken by him, and that such drug, and not some other cause, made the said Cooper become unconscious and insensible."

The court modified the instruction by substituting for the italicized words the following, "a drug," and as thus modified it was given.

The information charging the defendants with robbery did not allege the use of chloral hydrate, or any drug, but alleged that robbery was committed by the use of force and violence; and the evidence showed that, while a large quantity of chloral hydrate was found upon the defendants, some of it was in solution, and the analysis of one bottle containing the solution showed that a foreign substance, such as sugar or digitalis, had been mixed with chloral hydrate. We are unable to see wherein the defendants were prejudiced by the instruction. What does it matter whether the jury found from the evidence that the defendants administered pure chloral hydrate or chloral hydrate in solution?

Hawley, C. J., in *State* v. *Loveless*, 17 Nev. 424, 30 Pac. 1080, quoted with approval as follows:

"The rule is that judgments will be reversed for alleged errors in instruction only when, looking at the testimony, we can see that the jury may have been misled by them to the prejudice of the defendant, or when, in the absence of the testimony, it is apparent that the instructions would be improper under any possible condition of the evidence."

We do not think the defendants were in any way prejudiced by the action of the court, and the judgment is affirmed.