CARREL *v.* KALAMAZOO COLD-STORAGE CO

1. CONTRACTS—RESCISSION—RECOUPMENT—EVIDENCE.

One who has revoked the authority of another to buy and ship apples for him, and has rescinded the contract under which he has been operating, for the alleged reason that the fruit shipped was of an inferior quality and was not packed according to contract, may show in support of a claim of recoupment, in an action by the agent for the contract price of the apples shipped, that apples which the agent had intended to furnish him, and which were, upon notice of rescission, sold in another market, were improperly packed and of an inferior grade.

2. TRIAL—REQUESTS TO CHARGE.

The refusal to give a request to charge, where there is evidence in the case to support it, is erroneous, unless it is fairly covered by the general charge.

Error to Kalamazoo; Buck, J. Submitted January 13, 1897. Decided March 10, 1897.

*Assumpsit* by Isaac W. Carrel and others, copartners, against the Kalamazoo Cold-Storage Company, Limited, for goods sold and delivered. From a judgment for plaintiffs, defendant brings error. Reversed.

*Howard & Roos*, for appellant.

*Frank E. Knappen* and *A. J. Mills*, for appellees.

LONG, C. J.   This action was brought upon the following contract:

"This agreement, made this 23d day of August, 1894, between the Carrel Brothers, of the township of Dorr, State of Michigan, parties of the first part, and the Kalamazoo Cold-Storage Company, Limited, of Kalamazoo, Michigan, party of the second part, witnesseth: That the Carrel Brothers, parties of the first part, hereby agree to buy and pack apples for the said party of the second part, and load them on cars, and ship them to said party of the second part at Kalamazoo.   Said apples are all to be well-assorted, first-class apples, packed in first-class condition, in good barrels holding not less than three bushels each.   That said apples shall be not less than at the least eight-tenths the following varieties:   Northern Spy, R. I. Greening, Baldwins, Wagener, Jonathan, Hubbardston's Nonesuch, Canada Red, Spitzenburg, Seek No Further, Tompkins County King, Snow; and the balance to be R. Russet, T. Sweet, Ben Davis, and Gilliflower; and of no other kind or kinds without the written consent of the party of the second part.   And the parties of the first part are to be bound at all times, as to the price to be paid for such apples, by the instructions of the party of the second part to them.   And the parties of the first part are to properly mark every barrel of said apples true to name, and, if any of said apples are not so marked and properly assorted and packed, are to be held responsible for the same, for the full cost of the same at their storage building.   And the said party of the second part agrees to pay the said Carrel Brothers, parties of the first part, the sum of 25 cents per barrel for buying and doing the above-described work.   And the said party of the second part agrees to pay for said apples as fast as they shall arrive at their storage building in Kalamazoo in car lots, by expressing the money to parties of the first part on the day of the arrival of the car, or not less than 24 hours thereafter; the said party of the second part to pay for the barrels, the cost of the same not to exceed 25 cents per barrel.

[Signed]                    "CARREL BROTHERS.
          " KALAMAZOO COLD-STORAGE CO., LTD."

It appears that the plaintiffs were authorized to pay $1.25 for No. 1's, and 75 cents per barrel for No. 2's, 25 cents apiece for barrels, and were allowed a commission

of 25 cents per barrel for buying and packing. The plaintiffs having commenced buying and sending apples under the contract, on October 15, 1894, they received a letter from the defendant, stating:

"We have examined your packing, and find that there are many apples way below the size, that you ought not to pack. We wrote September 30th, which we refer you to. What you have marked 'Red Pippin' is really the leather apples, but is not really of much account. We do not want many off varieties."

Defendant wrote plaintiffs again, on October 28th, as follows:

"When you were here, and saw the condition of the apples you were sending us, you promised that you would see personally that the balance of them were packed according to contract. This you have failed to do, and every car is about like the former, packed very carelessly, and a great many poor apples put in, so that it will necessitate the repacking of the entire lot. Under this state of affairs we can only do this: We send you by express to-day $300, and declare the contract off. When we have repacked the apples, if there is anything coming to you, we will pay it, but until that time we can send you no more money nor accept any more apples."

The contention of defendant is that the apples were not assorted and packed according to the contract; that the barrels contained small and inferior, rotten and wormy fruit, below the grade of No. 1's, and that in disposing of them it suffered great loss, which it should be allowed to recoup against the plaintiffs' claim. The testimony on the part of the defendant tends to show that, by reason of the inferior packing and quality of the apples, they all had to be reassorted and repacked before they could be marketed; also that the first delivery under the contract was made October 9th, when a car load was shipped directly from Dorr by the plaintiffs, and consigned to J. Leverone & Co., and by them refused on account of the inferior quality; that the defendant was obliged to store this car load at Cincinnati, and to reassort and repack

the same there, before sale could be made of what merchantable fruit the car contained; that, out of 168 barrels contained in the car, defendant, after reassorting and repacking, got 22 barrels of No. 1's, and 77 barrels of No. 2's, losing completely 69 barrels; and that, even then, those that were marketable at all had to be sold at greatly reduced prices, because of not being up to grade. The whole quantity of apples claimed to have been shipped by plaintiffs to defendant was 2,719 barrels of No. 1's, at $1.75 per barrel, and 51 barrels of No. 2's, at $1.25 per barrel, and some crab apples, amounting to $6.75,—the whole aggregating $4,828.75; and plaintiffs admitted having been paid thereon $3,035, claiming a balance due of $1,793.75. Defendant's claim is that in reassorting and repacking it sustained an absolute loss of 495 barrels, and that it suffered a loss in difference between cash paid and cash received for the fruit of $334. Plaintiffs contended that the defendant inspected and accepted the car of apples shipped to Cincinnati; but the evidence of the plaintiffs shows that but one barrel was examined out of the whole lot that was put into the car.

On the trial, one of the plaintiffs, Mr. Isaac Carrel, was called as a witness, and testified substantially that after the contract was signed, and in pursuance of it, they started to buy apples for the defendant, and bought for no other parties. Thomas Carrel was then called as a witness, and testified substantially that he saw many of the apples packed, and that no small or decayed apples were put in; that they had from 12 to 16 men packing, divided into four gangs, and that he drove around the township, and looked after the packing. The witness then testified, on cross-examination:

"We had apples of the same kind as those shipped to the cold-storage company on hand at the time we quit shipping to the cold-storage company. We shipped these other apples, that we had originally intended for the cold-storage company, to other parties. I cannot say whether

my brother consigned them to himself or not.    I think he did, to Chicago."

Defendant's counsel then sought to show, as a part of the cross examination of this witness, the character and quality of the apples shipped to Chicago, claiming that they were a part of the apples purchased for defendant, were of an inferior grade, and had to be sold by the plaintiffs themselves in the Chicago market as seconds. The court refused to permit this testimony to be given, stating that there was nothing in the direct examination of the witness bearing any relation to any other apples than those shipped to defendant, and that it was not permissible as cross-examination.    The court then stated, "When you get to your side of the case, then that would come up fairly for consideration."    The witness Isaac Carrel had testified, previous to that, that "after we quit shipping to defendant, we shipped four car loads to Chicago, to R. S. Carrel, and Burnett Brothers handled them for us."    When the defendant, in its direct case, offered proof of the bad condition of these apples, the trial court excluded the same, on the ground that it raised a collateral issue.    Exception was taken to the ruling of the court in reference to this testimony offered, not only upon the cross-examination of Mr. Carrel, but in defendant's direct case.    The plaintiffs had judgment for $1,921.50.

The only questions raised relate to the refusal of the court to admit this testimony, and to the refusal of defendant's third request to charge.    We think the court was in error in not admitting this testimony.    It appears that the four car loads of apples shipped to Chicago were a part of the apples which had been purchased by the plaintiffs for the defendant; that they were packed by the same packers, were all purchased in the same neighborhood, and the same price was paid as for those which had been already shipped.    The testimony was offered for the purpose of showing the bad quality of the apples which were being purchased by the plaintiffs

for the defendant under the contract, and that those apples were not up to the quality and grade specified in the contract.

We think, also, that the court should have given the defendant's third request to charge. It stated fully the defendant's claim that the apples were not up to the contract, and had reference to the apples which had been shipped to Cincinnati, and stated that plaintiffs came to Kalamazoo at defendant's request, were shown a barrel of the fruit taken from the car, and, upon an examination of it, admitted that the fruit was not properly assorted and packed, and were then told by defendant that it could not handle fruit in that condition, and that plaintiffs then requested defendant to do the best it could with such fruit, and that they would make good all losses and expenses which the defendant should sustain in regard to such apples, and agreed to pack the balance of the fruit in accordance with the terms of the contract. There was some evidence given in the case by the defendant which tended to support this request to charge, and we think the general charge of the court did not sufficiently cover the question raised.

For these reasons the judgment must be reversed, and a new trial ordered.

The other Justices concurred.