QUINN, Plaintiff in error, vs. THE STATE, Defendant in error.

*April 12—May 31, 1913.*

*Assault with intent to commit rape: Evidence: Intoxication rendering female incapable of consenting: Knowledge of such condition: Giving of liquor to produce it: Intent: Instructions to jury: Absence of outcry: Circumstantial evidence.*

1. Evidence *held* sufficient to sustain a conviction of assault with intent to commit rape upon a female who was so intoxicated as to be insensible and incapable of consenting.

2. In such a case the act must be treated as being against her will.

3. The crime charged against defendant was an assault with intent to commit rape and the court instructed the jury that they should find him guilty if convinced beyond a reasonable doubt that he actually had sexual intercourse with the female at the time and place alleged and that she was at such time so intoxicated as to be incapable of either resisting or consenting to such act, or if they were so convinced that at the time in question the female was so intoxicated as to be incapable of either resistance or consent and the defendant, with knowledge of that fact, laid hands upon her with the intent then and there to have sexual intercourse with her. *Held* that, the attention of the jury being specifically directed to the necessity of finding that defendant had knowledge of her condition, there was no prejudicial error in failing to bring that to their attention in the first part of the instruction; especially as the evidence showed that in fact he must have known of the actual condition as to her intoxication brought about through his own acts.

4. The giving of intoxicating liquor to a female constitutes an assault with intent to commit rape if given with the intent to

destroy her power of resistance by reducing her to insensibility, and with the present intent to have sexual intercourse with her when in that condition.

5. Where it was shown that at the time of the assault the female was insensible and in a stupor, there was no error in refusing a requested instruction as to the effect of the absence of any outcry on her part.

6. Refusal to give requested instructions as to circumstantial evidence was not prejudicial error where the evidence in the case was largely direct and positive and there was no need for the jury to resolve any issue upon circumstantial evidence alone.

ERROR to review a judgment of the county court of Walworth county: CHARLES B. ROGERS, Judge. *Affirmed.*

The plaintiff in error prosecutes a writ of error to review a judgment sentencing him to confinement in the state reformatory at Green Bay for the crime of assault with the intent to commit rape upon one Agnes Secquist.

The crime is alleged to have been committed on the 22d day of February, 1912, in the city of Whitewater. Agnes Secquist was eighteen years of age in June, 1911. She had resided at La Crosse with her father up to August, 1909, when she had been committed to the Industrial School for Girls at Milwaukee, where she remained until September, 1911, at which time she was paroled and put into the home of Ralph Tratt, a farmer residing near the city of Whitewater. It is shown that she had led a wayward life and was insubordinate to parental control and therefore had been committed to the industrial school. She was informed that she was paroled upon condition of good behavior and that she must refrain from communicating and associating with men. It appears that she violated this condition and that she soon began to call up men and boys by phone, secretly, and planned to have them call for and meet her. She learned of the defendant by telephone communication under the name of Frank Johnson in January, 1912, and thereafter they repeatedly communicated by telephoning. They first met on Sun-

day, February 18th, on the city streets, pursuant to a telephone call by her at the saloon of one Kraft, where she had been in the habit of calling him. After meeting him they made an unsuccessful attempt to go to this saloon to secure something to drink, and, after spending some time on the street, they upon parting exchanged kisses in the street and she went home.

On February 22d she called defendant on the phone at Kraft's saloon and arranged with him to meet him near the home where she was staying. After having put the children to bed she and the hired man of Mr. Tratt went to meet the defendant at the place suggested. They saw the defendant and Hughes coming along the middle of the street. The hired man then went home and she went to meet the two men. When they met she put her arm about *Quinn* and kissed him. *Quinn* introduced Hughes to her as George Miller. She knew that this man introduced to her as Miller was not one Carlson, whom she had requested the defendant to bring with him. She and *Hughes* saluted by kissing and the defendant then produced a bottle and asked her to drink, which she declined, stating that she had already had two drinks of Canadian rye and some Miller's High Life, but in fact she had drunk neither and did not know what Canadian rye was. She took a drink from the bottle, filling her mouth, and then swallowing it. It was strong and she could hardly swallow it. She then returned the bottle to the defendant, who gave it to Hughes, who took a drink, and the defendant then took a drink and put the bottle in his pocket. They walked eastward toward town. She calculated to walk as far as Hall's, where Mr. and Mrs. Tratt were. They stopped at times on their way and drank. When they reached the normal school they stopped and drank and embraced and kissed. Then she thought that she saw some persons coming and feared that they would recognize her and suggested that they turn

north on Graham street. She remembered nothing of any drinking on this street and of no insult to her by either of the men. They then left Graham street, crossed Main street to Hall's residence, and saw Mrs. Tratt through a window, and from there they went to Center street, where she offered to go home, and the defendant suggested and started ahead to get some more whisky, and she and Hughes followed him to a large building where there was a light on the street corner. She feared that they would be seen by others and she and Hughes walked to the middle of the block on the side street, where they stopped and Hughes embraced and kissed her, proposing that she treat him right, and she declined to do so, understanding full well what he meant. When *Quinn* returned he whistled and came across the street and they then walked down Center street homeward. They drank at the Esterly school house, from the fresh bottle which *Quinn* had procured, until it was empty. She drank freely and as much or more than the men. While at this school they embraced and kissed, but neither of the men made an indecent proposal there. The last she remembers at this point was that she suggested going home and that she could not walk. They crossed the Esterly school yard to the side street leading to the normal school. She remembers they were carrying her, but does not remember walking on the walk. At the normal school her impressions were vague, but she had an impression of passing a large building with lights in it and that she fell down and was carried, and recalls being in bed in a strange place and of seeing Dr. Miller, whom she had seen at Tratt's home. She testifies to having no recollection of having or of any one attempting to have sexual intercourse with her.

The defendant *Quinn* was then twenty-five years old, living with and supporting his mother at Whitewater, and had been a factory worker for three years immediately preceding this day. The evidence discloses that he was a liquor drinker. Hughes was twenty-six years old and had been mar-

ried for two years. He and his wife were living with her mother. Hughes was arrested and jointly informed against with the defendant, but demanded a separate trial, which was awarded him. The men's version of the transactions of the evening after meeting Agnes Secquist, as to their walking on the streets, drinking of liquor, and the conversation they had, are in substantial accord except as to what occurred between Hughes and Agnes Secquist when *Quinn* left them on the Esterly school grounds while he procured the second bottle of liquor and returned thereto, and as to what occurred between her and defendant when Hughes first left them on the normal school grounds and returned; at which time Hughes testifies he observed them as he approached and saw defendant on top of her, in the position of having sexual intercourse with her, and that after defendant arose he saw her lying on her back, her legs stretched out, and her garments raised up to her waist; that she was in a condition of stupor and unconsciousness; that she made no effort to put her clothes down to cover the exposed parts of her person, and that he, after the defendant spoke suggesting to him to help himself, pulled up one of her stockings which had come down, and she said "Stop that," and that he then pulled her clothes down to cover her, and to him she appeared unconscious and as if she knew nothing. It appears that she could not walk nor give intelligible replies to inquiries when found by others immediately after she was left by the defendant and Hughes; and that she was in a maudlin stupor, the result of alcoholic liquors.

The defendant denies that he had or attempted to have intercourse with her at any time on the occasion in question and denies that he was in the position on her as testified by Hughes or that he did or said anything tending to show he was guilty of outraging her as is alleged and claimed by the state.

The jury found that defendant assaulted her with intent

to commit the crime of rape, and upon this verdict the court adjudged the defendant guilty of this crime and sentenced him to two years' confinement in the state reformatory. This judgment is before us for review.

For the plaintiff in error there was a brief by *E. T. Cass* and *Henry Lockney,* attorneys, and *D. S. Tullar,* of counsel, and oral argument by *Mr. Cass* and *Mr. Lockney.*

For the defendant in error there was a brief by the *Attorney General, W. W. Gilman,* assistant attorney general, *Robert C. Bulkley,* district attorney, and *Jay W. Page,* and oral argument by *Mr. Gilman, Mr. Bulkley,* and *Mr. Page.*

SIEBECKER, J.  The defendant contends that the evidence fails to establish the fact of his guilt of the crime charged in the information, and that the court erred in refusing to direct a verdict of not guilty. The grounds for this contention are that the evidence affirmatively shows that the defendant did not assault Agnes Secquist as alleged, and that the defendant and she, from the time they met on the evening in question, had an understanding by which she consented to sexual intercourse, and hence the essential elements of the crime were not proven. The finding of the jury that the defendant committed an assault upon her is abundantly supported by the positive and circumstantial evidence of the case. The jury were fully justified to find this fact from the evidence of Hughes, the persons at the normal school, and all of the details of what took place there and the defendant's conduct as regards giving her the liquor, shown by his evidence and that of the girl and Hughes. Whether such an assault was made with the intent to commit rape is the serious question presented upon this branch of the case. It is insisted that Agnes Secquist's conduct, from the time she communicated with the defendant on the evening of February 22d to the time of the alleged assault on the normal school grounds, conclusively shows that she consented to hav-

ing sexual. intercourse with the defendant, and that the evidence therefore fails to establish an essential element of the crime of assault with intent to commit rape. Under the facts and circumstances as disclosed by the evidence, it is important to ascertain how the fact of Agnes Secquist's intoxication affects the question of the defendant's guilt in the matter. The evidence leaves no room for argument but that the jury were warranted in finding that she was intoxicated so as to be insensible and in a stupor at the time it is claimed defendant assaulted her on the normal school grounds. · Her evidence, as well as that of Hughes and others who saw her, clearly tends to show that she was in a mental stupor from alcoholic drink which made her insensible and incapable of consenting. This fact has an important bearing in characterizing the assault on her by the defendant, which the jury must be presumed to have found by their verdict. In *Whittaker v. State,* 50 Wis. 518, 521, 7 N. W. 431, in discussing the effect of intoxication as regards the element of nonconsent of the female in rape cases, it is declared:

"In further explanation and palliation of this use of the word [consent], it has been held that forcible connection with a female who is insane, or an idiot, or intoxicated so as to be insensible, or who is deceived, believing the defendant to be her husband, and in other like cases, where the *will* of the female does not concur with the act, or oppose it, and does not act at all, and where she has no power of consenting or dissenting, the act is said to be 'against her will,' and this necessary ingredient of rape is present. 2 Whart. Crim. Law, § 1142, and note *a;* and as in *Walter v. People,* 50 Barb. 144; *People v. Quin,* id. 128; and *Crosswell v. People,* 13 Mich. 427.

"In such cases it is consistent to hold that the act is 'against the will' only because it was not approved by the will, or the will did not concur with the act. In all cases where there is no sensibility or consciousness, or freedom of the will, the act is said to be against the will."

As above stated, the evidence adduced fully sustains the

conclusion that Agnes Secquist was intoxicated so as to be insensible and that if the defendant assaulted her with the intent to commit the crime of rape she was incapable of consenting thereto, and his act must be considered in the light of her incapacitated condition of approving it by her will and be treated as being against her will. The court fully informed the jury that the alleged assault upon her could not be found to constitute the offense of assault with intent to commit rape under the facts and circumstances adduced in evidence, unless they found beyond a reasonable doubt that the defendant in fact assaulted her with such intent and that she was so intoxicated as to be insensible and thus rendered incapable of consenting thereto. The claim that her conduct in arranging with the defendant to meet him and her conduct after meeting him and Hughes shows that she thereby gave her consent to sexual intercourse cannot be considered established as a matter of law in the light of her intoxication and his denial that he had or attempted to have intercourse with her. We therefore consider that the court properly refused to direct the jury to acquit the defendant of the charge preferred against him upon these grounds.

The court informed the jury that the crime of rape necessarily included an assault with intent to rape, and that a defendant charged with the latter offense could be convicted thereof if the jury found a rape had been committed, and proceeded by instructing them as follows:

"If the testimony convinces you beyond a reasonable doubt that the defendant *Francis Quinn* actually had sexual intercourse with Agnes Secquist at the time and place alleged, and that at the time of such intercourse the said Agnes Secquist was so intoxicated as to be incapable of either resisting or consenting to such act, then you should find the defendant guilty as charged. Or, if the testimony convinces you beyond a reasonable doubt that the witness Agnes Secquist, on the night in question, was so intoxicated as to be incapable of either resistance or consent to sexual intercourse, and then the defendant, with knowledge that she was so incapable of

either resisting or consenting, laid hands upon her with the intent then and there to have sexual intercourse with her, then you should find him guilty as charged."

The first part of this portion of the charge is assailed as prejudicially erroneous because it asserts that it is not necessary that the defendant know of her intoxicated condition to warrant a verdict of guilty. It must be borne in mind that the charge preferred against the defendant was an assault with the intent to commit rape, and that the jury were repeatedly informed that this was the offense for which the defendant was being tried. The foregoing instructions must be considered in the light of this fact and the jury must be presumed to have acted in accordance therewith. Examining it from this viewpoint we do not find the instructions prejudicially erroneous, though the first part omits the element of knowledge by the defendant of her intoxication. The jury had their attention specifically directed to the necessity of finding that he must have had knowledge of her condition to authorize them to find him guilty as charged. We cannot think that the omission to bring this to their attention specifically in the first part of this portion of the charge misled them to defendant's prejudice. Furthermore, the evidence on the subject is indisputable, to the effect that defendant must have known the actual condition as to her intoxication brought about through his own acts, and hence the alleged omission complained of in the charge could not have operated to his prejudice by having any of his rights substantially affected thereby. *Reg. v. Camplin,* 1 Den. Crown Cas. 89; *Comm. v. Burke,* 105 Mass. 376.

It is urged that the court erred in charging that if defendant gave Agnes Secquist the liquor with the intention fully formed in his mind of putting her in a condition of insensibility so that she had no power of opposing sexual intercourse with him and with the intent then present in his mind to have such intercourse with her while in such powerless condition, then the giving of the liquor constituted an assault

with intent to commit rape. The charge immediately follow-ing this instruction directed the jury that if defendant gave her liquor for the purpose only of inducing her to submit to sexual intercourse with him, then no assault was committed in giving it to her and he could not be held guilty of the crime charged against him. It is clear that the instruction com-plained of informed the jury that the giving of the liquor by the defendant constituted an assault only if it was done by him with the intent to destroy her power of resistance by re-ducing her to insensibility and the present intent to have sexual intercourse with her when in that condition. Under such circumstances the assault with intent to commit rape is complete, and we find no objection to the instruction be-cause it did not require that some additional force must be employed by the assailant to that involved constructively in the acts of giving her the liquor with these intents in his mind. There is no dispute but that he took the actual steps of giving her the liquor, and, since the jury found this was done with the criminal intent charged, the essentials of the offense are present. *State v. Lung,* 21 Nev. 209, 28 Pac. 235.

It is argued that the court erred in its charge to the jury in that it did not correctly state the law upon the question of reasonable doubt. We have examined the charge on this subject and find it substantially correct. The phraseology employed is in no way misleading to the jury, and they un-doubtedly gave him the benefit of every reasonable doubt.

It is argued that the court erred in refusing to charge as requested upon the effect, in cases of this nature,· of outcry or its absence by the person assaulted. Under the evidence of Agnes Secquist's condition, the instruction was immaterial and its omission deprived the defendant of no right. It is also argued that the refusal to give the requested charges as to circumstantial evidence was error. The evidence in the case is largely direct and positive in character and no neces-

sity is shown requiring the jury to resolve any issues on such evidence alone. While the instruction might properly have been given as requested, its rejection cannot reasonably be said to have affected any substantial right of the defendant.

We have examined the case with care and find no reversible error in the record.

*By the Court.*—Judgment affirmed.