# JANUARY TERM, 1920.

PEOPLE *v.* RAJONA.

CRIMINAL LAW—MURDER—EVIDENCE OF ANOTHER CRIME.
In a prosecution for murder, the admission of testimony by five witnesses that soon after the killing defendant was identified by a colored man as the man who held him up and robbed him a short time before, *held*, reversible error which was not cured by the charge of the court that it was admitted to show the context. MOORE, C. J., and STEERE, J., dissenting.

Error to recorder's court of Detroit; Connolly (William F.), J. Submitted October 16, 1919. (Docket No. 108.) Decided January 6, 1920.

Albert Rajona was convicted of murder in the second degree, and sentenced to imprisonment for life in the State prison at Jackson. Reversed.

*Doyle & Cameron,* for appellant.

*Alex. J. Groesbeck,* Attorney General, *Matthew H. Bishop,* Prosecuting Attorney, and *Van H. Ring,* Assistant Prosecuting Attorney, for the people.

FELLOWS, J. Defendant was convicted in the trial court of murder in the second degree. The murder of one Clark occurred about 9 o'clock in the evening of February 7, 1917, on Rivard street near Catherine street in the city of Detroit. It is the claim of the prosecution that the defendant shot Clark, ran a few feet to the corner, thence west along Catherine street to Hastings street where he was intercepted by an officer and taken into custody. Defendant was a witness in his own behalf. He denied his guilt. It was

For authorities passing on the question of evidence of other crimes in criminal case, see note in 62 L. R. A. 193.

his claim that he had been in a store of one Verney and left there about 9 o'clock intending to see one Cianpano and go to bed; that the shots frightened him; he ran down Catherine street and was taken into custody. To sustain its claim the prosecution called two eyewitnesses to the shooting and the officers and others who participated in or who saw the pursuit and capture of defendant; these witnesses testified to defendant making a movement in his flight as though throwing something from him, to the finding of the revolver at that place in the undisturbed snow, and that it had the odor of fresh smoke upon it. Defendant in addition to his denial of guilt and his testimony as above stated produced Verney as a witness; his testimony corroborated that of defendant as to his being in the store and the time he left it. Character witnesses were also produced by the defendant.

In addition to the proof tending to establish the guilt of the defendant of the crime charged, it was permitted the prosecution in its case in chief to prove by five witnesses that when defendant was brought back to the corner a colored man named Hunter stated in substance that defendant had held him up about an hour before and took $3 from him. The witnesses vary considerably as to what was said. A police officer testified that Hunter said, "He had a blue steel gun, an automatic"; no other witness testifies to this as a part of the conversation. One witness testified that defendant made no reply to Hunter, another that defendant said he didn't know him, another said he replied to Hunter by saying, "Why, I work," and one witness was permitted to testify, "Frank Hunter told me that this man had held him up and took $3 from him," but did not believe he mentioned a revolver. "He just said he held him up." All this testimony was seasonably objected to and motions were made to strike it out. Hunter was not called as a witness, so that we have not the question before us which was

presented in *People* v. *Winney,* 196 Mich. 347. There
the trial court had permitted proof that defendant
had obtained a revolver and ammunition the night
before the murder by means of burglary, but the trial
court had carefully guarded defendant's rights and
expressly instructed the jury that this testimony could
be only considered upon the question of whether he
had the means to commit the crime. But here Hunter
was not sworn as a witness so as to be subject to
cross-examination, his unsworn statement that defend-
ant had held him up was received, and four of the
witnesses make no mention of the "blue steel gun"
forming any part of the conversation. The only effect
of this testimony was to prove by such unsworn state-
ments that defendant had committed another crime
than the one for which he was on trial, and the trial
judge admitted it upon the theory and statement that
this court had sanctioned the admission of testimony
of a series of crimes of the same character, while in
his charge he stated that he admitted it to show the
context, but nowhere in his charge did he tell the jury
that the testimony could not be considered by them
for the purpose of determining defendant's guilt or
that proof of another crime could not be considered
in establishing guilt of the crime charged. In the
recent case of *People* v. *Rice,* 206 Mich. 644, a case
where the question of intent was involved, we fully
considered the question of receiving evidence of other
similar transactions, part of the same system to de-
fraud, and, while recognizing the general rule, we held
that where the question of intent to defraud was in-
volved, the case fell within the exception to the rule.
While there are other exceptions to the rule, the crime
of murder by shooting is not one of them. From the
earliest day down to the last speaking of this court on
the subject in *People* v. *Wheaton,* 207 Mich. 173, the
general rule has been recognized that upon the trial
of a criminal case the prosecution will not be per-

mitted to give evidence tending to establish the guilt of another distinct and independent crime.

In the instant case the defendant was charged in the information with the crime of murder; upon the trial he was called upon not only to meet this charge but also the further charge that he held up the colored man, Hunter. Upon this latter charge he was not confronted with his accuser, because Hunter could not be found; but unsworn statements of Hunter, made, not in open court where he might be subject to cross-examination and his testimony sifted, but upon the street corner, were received against defendant. This testimony was of a highly prejudicial character and the effect of its admission was in no way cured or attempted to be cured in the charge of the learned trial judge. The error went to the substantial rights of the defendant; it deprived him of a fair trial.

For this error the conviction must be reversed and the defendant remanded to the custody of the sheriff of Wayne county for a new trial.

BROOKE, STONE, BIRD, and SHARPE, JJ., concurred with FELLOWS, J.

MOORE, C. J. (*dissenting*). I do not agree with the conclusion reached by Justice FELLOWS. Even though it be conceded that the testimony to which he refers should have been excluded it does not follow that the case must be reversed for that reason. At the common law there is no right of appeal as of course from a conviction for crime. This right is the creature of the statute. In granting it the legislature may impose such terms as in its wisdom are calculated to promote the interests of justice. So many persons who were undoubtedly guilty of the crime with which they were charged have escaped punishment for errors that did not go to the merits of the question of their guilt as to become the subject of unfavorable

criticism of the courts. A remedy for that situation was sought and after a great deal of discussion Act No. 89 of the Public Acts of 1915 (3 Comp. Laws 1915, § 14565) was adopted. It reads:

"No judgment or verdict shall be set aside or reversed, or a new trial be granted by any court of this State in any case, civil or criminal, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless, in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice."

This act was construed by this court in affirming the case of *People* v. *Smolkiewicz*, 206 Mich. 1.

In the instant case there was testimony by eyewitnesses of the shooting by the respondent, under such circumstances as to constitute the crime of murder. The case is directly within the language of the statute. An examination of the entire record does not make it "affirmatively appear that the error complained of has resulted in a miscarriage of justice" but on the contrary a reading of this record establishes the guilt of the accused beyond any reasonable doubt.

The conviction and judgment should be affirmed.

STEERE, J., concurred with MOORE, C. J.

Justice KUHN took no part in this decision.