PEOPLE v. RICH.

CRIMINAL LAW—RAPE—REFUSAL TO INSTRUCT AS TO FAILURE TO MAKE OUTCRY NOT PREJUDICIAL WHERE MISCARRIAGE OF JUSTICE NOT AFFIRMATIVELY SHOWN.

In a prosecution for rape, where the intercourse was admitted and the issue for the jury was as to whether force was used, error of the trial court in failing to give a requested instruction that if the prosecuting witness

---

[1]Criminal Law, 17 C. J. §§ 3606 (Anno), 3706, 3709.
     237—Mich.—31.

made no outcry, and was in position to have made an outcry, or could have made others hear who were in close proximity, then this circumstance should be taken into consideration, with all of the other evidence, in determining the guilt or innocence of defendant, *held*, by an equally divided court, not prejudicial, in view of the instruction as a whole, and 3 Comp. Laws 1915, § 14565, requiring affirmance unless the misdirection of the jury affirmatively appears to have resulted in a miscarriage of justice.

Error to Ingham; Collingwood (Charles, B.), J. Submitted October 15, 1926. (Docket No. 122.) Decided February 4, 1927. Rehearing denied June 6, 1927.

Arthur Rich was convicted of rape, and sentenced to imprisonment for life in the State prison at Jackson. Affirmed by an equally divided court.

*W. J. Barnard* and *Bernard J. Onen*, for appellant.

*Andrew B. Dougherty*, Attorney General, *O. L. Smith*, Assistant Attorney General, *Clyde C. Cortright*, Prosecuting Attorney, and *Andrew W. Lockton*, Assistant Prosecuting Attorney, for the people.

FELLOWS, J. Defendant was informed against in the Calhoun circuit court charged with common-law rape. The facts, briefly stated, are these: Defendant, a young man 21 years old, and the prosecutrix, Louise King, a young lady student at the Battle Creek College, aged about 19 years, in company with another young couple, Mr. Baker and Miss Reasoner, on the evening of May 25, 1925, drove out to the grounds of the Country Club at Goguac lake near Battle Creek in defendant's car. When they reached a point in the drive spoken of in the record as the "turn around" defendant and prosecutrix got out of the car. The prosecutrix claims defendant said he wanted to show her where he had made a remarkable shot in golf. Mr. Baker and Miss Reasoner remained in the car. The distance defendant and prosecutrix went from the

car is in dispute, defendant fixing it at a short distance and prosecutrix fixing it at from 350 to 500 feet. It is the claim of prosecutrix that defendant attacked her, beat her into insensibility and accomplished his purpose by force and against her will. Defendant admits the act of intercourse but insists that it was with the consent of the prosecutrix. It will not be necessary to detail subsequent events that evening, and it will suffice to state that the party returned to Battle Creek; defendant stated to friends of prosecutrix where she was living that she was intoxicated, and some of them accompanied the party in a drive taken for the purpose of resuscitating prosecutrix; she was returned to Battle Creek and during the night medical aid was summoned. The testimony established beyond doubt that from some source prosecutrix had received a most serious injury; her jaw was fractured and she was semi-conscious for many hours.

Defendant made a motion for change of venue from Calhoun county and filed affidavits in support thereof. This motion was opposed by the prosecuting attorney and counter-affidavits were filed. These affidavits do not appear in the record, although the argument in this court proceeded on the theory that they were of similar purport to those filed in the Ingham circuit on a similar motion, and which later affidavits are before us. The motion for a change of venue was denied, and a trial was had in Calhoun county resulting in a disagreement of the jury. The prosecuting attorney then made a motion for a change of venue, which was granted, and the case transferred to Ingham county over objection of defendant. Defendant sought a change of venue from Ingham county after the case had reached that county, but this request was refused and a trial was there had resulting in a verdict of guilty, followed by a life sentence. The case is before us on writ of error with a record of 1,199 pages and upon 198 assignments of error.

Much of defendant's brief is devoted to the question of change of venue, and it is insisted that section 10 of Act No. 157, Laws 1851, as amended (3 Comp. Laws 1915, § 14563), in so far as it permits a change of venue in criminal cases on application of the people, offends both the State and Federal Constitutions, and it is urged that, taking into consideration all of the opinions in the case of *Glinnan* v. *Judge of Recorder's Court*, 173 Mich. 674, it was so held in that case. While it is doubtless true that the *Glinnan Case* does modify the case of *Lyle* v. *Cass Circuit Judge*, 157 Mich. 33, it does not in any way modify the holding in *People* v. *Peterson*, 93 Mich. 27, and *People* v. *Fuhrmann*, 103 Mich. 593.   So far as the State Constitution is concerned, it must be held that the *Peterson, Fuhrmann*, and *Glinnan* cases settle the constitutionality of this legislation, and long ago, in *Gut* v. *The State*, 9 Wall. (U. S.) 35, it was settled by the Supreme Court of the United States that such legislation by a State presented no Federal question.   It was there said by Mr. Justice Field, speaking for the court:

"Undoubtedly the provision securing to the accused a public trial within the county or district in which the offense is committed is of the highest importance. It prevents the possibility of sending him for trial to a remote district, at a distance from friends, among strangers, and perhaps parties animated by prejudices of a personal or partisan character; but its enforcement in cases arising under State laws is not a matter within the jurisdiction of the Federal courts."

It must be held that this legislation offends neither the State nor the Federal Constitutions.   We do not overlook *State* v. *Gossett*, 117 S. C. 76 (108 S. E. 290, 16 A. L. R. 1299), upon which much reliance is placed by defendant's counsel.   The opinion in that case is both forceful and able.   But entirely different legislation was there before the court than is here involved.

Under the act there before the court, the solicitor of the circuit was empowered without any showing to apply to the governor to call a special term of court; the governor was required to call such special term and the chief justice was required to designate a disengaged circuit judge to hold the term.    Under the act, the governor and chief justice were but automatons in the hands of the solicitor.    It was held that the legislation was invalid and it was pointed out wherein it differed from former legislation which permitted the courts to function in the discharge of judicial duties in their proper sphere.    Here, while the motion is made by the prosecuting attorney, the court in the discharge of its judicial functions determines as a judicial question whether the motion shall be granted or denied and the change is made by, and only by, an order of the court.    The cases are clearly distinguishable.

But it is insisted the section is no longer in force. When the judicature act was passed the provision stood as section 309, 1 Comp. Laws 1897, being section 10 of chapter 25 of that compilation, although it had been amended.    By the judicature act (3 Comp. Laws 1915, § 14465), chapter 25 "with the exception of section 309," was repealed.    It is the contention of defendant's counsel that if the legislature desired to save this section it should have re-enacted it under the provisions of art. 5, § 21, of the Constitution, which reads:

"No law shall be revised, altered or amended by reference to its title only; but the act revised and the section or sections of the act altered or amended shall be re-enacted and published at length."

But this section was neither revised, altered, or amended.    It was left to stand as it then was.    Manifestly this section of the Constitution does not require the legislature to re-enact laws it determines shall be left as they are.

It is next urged that the showing for a change of venue was insufficient and that the order made was an abuse of discretion. The affidavit of the prosecuting attorney, which accompanied the petition for change of venue, standing alone, was not sufficient to authorize the order, the ground alleged being that a fair and impartial trial could not be had in Calhoun county "without great expense to the people of Calhoun county." The criminal laws must be enforced, and defendants charged with crime are entitled to a trial by a fair and impartial jury notwithstanding great expense to the taxpayers is caused. But the trial judge had before him not only this affidavit but also the numerous affidavits filed by defendant himself on his motion for a change of venue. These affidavits, as I have already stated, are not before us. The trial judge had acquired judicial knowledge from the first trial whether difficulties were encountered in obtaining the jury on that trial and what occurred on that trial (*People* v. *Swift,* 172 Mich. 473). I do not think it can be said upon this record that he abused his discretion.

But it is urged that the transfer should not have been made to Ingham county; that that county had a January term and that there was undue haste in bringing on the second trial. But defendant was arrested May 29th, one continuance had been granted by the Calhoun court and there had been one trial. The order was made December 23d, nearly seven months after his arrest. Defendant's claim that he was "railroaded" is not, under these facts, sustained. After the transfer to Ingham county, defendant there moved for a change of venue supported by over 200 affidavits. The people filed over 400 affidavits in opposition. These affidavits are before us in substance. They present, as does another motion based on some newspaper articles, questions to be determined in the sound judgment of the trial judge of Ingham county. We are

not persuaded that there was an abuse of discretion in denying these motions.

An assistant attorney general appeared with the prosecuting attorney to participate in the trial on behalf of the people. Such appearance and participation were objected to and error is assigned on the overruling of such objection. The objection was not well taken. In speaking of the power of the attorney general, it is said in 2 R. C. L. p. 927:

"In the conduct of criminal proceedings he possesses all the powers of a prosecuting attorney, including those of appearing before the grand jury, signing indictments and of either pursuing cases to a final determination or of entering a *nolle prosequi* therein, in which latter respect his power is frequently greater than that of the local official."

See, also, Act No. 232, Pub. Acts 1919 (Comp. Laws Supp. 1922, § 141 [1, 2]) ; *Mundy* v. *McDonald,* 216 Mich. 444 (20 A. L. R. 398) ; *State* v. *Robinson,* 101 Minn. 277 (112 N. W. 269, 20 L. R. A. [N. S.] 1127) ; *State* v. *District Court,* 22 Mont. 25 (55 Pac. 916) ; *State* v. *Heiser,* 20 N. D. 357 (127 N. W. 72) ; *State* v. *Bowles,* 70 Kan. 821 (79 Pac. 726, 69 L. R. A. 176).

After the defendant had exhausted his peremptory challenges, the prosecution was permitted to exercise peremptory challenges although it had previously expressed satisfaction with the jury. There was no error in allowing this to be done. The right to exercise a peremptory challenge continues until the jury is sworn. *Jhons* v. *People,* 25 Mich. 499; *Scripps* v. *Reilly,* 38 Mich. 10; *Hamper's Appeal,* 51 Mich. 71.

A large number of errors were assigned on the admission and rejection of testimony. I am not persuaded that they present any reversible error. In the main they do not require discussion. Defendant offered to prove that a few days after the occurrence certain witnesses examined the premises where

it took place, made a careful examination of the ground and vegetation, that there had been no perceptible precipitation in the meantime, and they found no evidence of a struggle. The premises were outside the golf grounds proper, were not in the rough where some golfers are wont to go, were grown up to briers and rank vegetation, and were not in general use. The court with propriety might have received this testimony, but defendant was permitted to and did produce witnesses who went over the premises at an earlier date, and found no evidence of a struggle. There was no testimony to contradict this. Under these circumstances, defendant was not harmed by this ruling. Possibly the court might with propriety have been a little more liberal in admitting testimony of defendant's expert, Dr. Bauch, but we do not find any ruling while his testimony was being taken that constitutes reversible error. Defendant's counsel also complain bitterly that they were unduly restricted in the cross-examination of prosecutrix and some of the other witnesses. The extent of such cross-examination as was here involved rested in the sound discretion of the trial judge. *People* v. *Vanderhoof*, 234 Mich. 419, and cases there cited. We discover no abuse of such discretion. Most of such attempted cross-examination was clearly improper.

Error is assigned on the conduct of the assistant attorney general during the taking of testimony and upon his argument to the jury. Frequently upon the trial counsel on both sides informed the court that they were eminently fair and counsel on the other side was eminently unfair. In the briefs filed in this court we are furnished with like information. Doubtless the trial judge was able, as this court is able, to glean some information on this subject without so much of protestation and accusation. Both sides were represented by able, forceful trial lawyers. Each was trying the case for all he was worth, and there may be

some force in the claim that the prosecution did not constantly keep in mind the admonitions of this court on numerous occasions that prosecuting counsel owe a duty to the defendant as well as to the people. But unless reversible error was put into the case by conduct of prosecuting counsel, reversal may not be had, and it may not be had solely on the ground that the prosecution was conducted with vigor. In *People* v. *Nemer,* 218 Mich. 163, it was said by this court:

"While it is true, as contended by defendant's counsel, that the prosecuting attorney stands in a somewhat different position than private counsel, and in the trial of a case has the duty cast upon him of seeing that defendant has a fair trial, he is not required to be supine, nor is he required to apologetically present the people's case. He is entitled to display a reasonable amount of vigor in the trial of a case, and, unless he transgresses the rules of conduct his position as a public officer requires, should not be condemned by this court."

I am not persuaded that there is any reversible error covered by the assignments of error dealing with this subject, and but two of such assignments of error require consideration. In the closing argument for the prosecution the following occurred:

"And then he said, 'were you ever arrested when you were down at Ann Arbor? No. Were you ever arrested in Detroit? *A.* No.' And then, when I happened in my snooping sort of a way to have looked up this gentlemen's pedigree, and trotted out here a jail record and trotted out here an exhibit, where it showed under the seal of the court that he had been convicted—

"*Mr. Barnard:* Now, wait a minute. I take exception to that. You never showed him that, or anything of the kind.

"*Mr. O. L. Smith:* I say to the court that I did, and he admitted it on the stand.

"*Mr. Barnard:* I challenge the record.

"*Mr. O. L. Smith:* Well, I will challenge the record.

"*The Court:* You may have an exception, proceed, Mr. Smith.

"*Mr. O. L. Smith:* You saw me, gentlemen of the jury, step up here directly up here to the stenographer's desk and show him a paper with the seal of the court on it, marked as an exhibit. And he saw me have a little slip which was an arrest record—a jail record marked as exhibits and as I stepped up there, to him, to present them to him, he immediately turned turtle and turned around and said, yes. Yes, he said he has been arrested—

"*Mr. Barnard:* Now, just a moment—

"*Mr. E. C. Smith:* Just a moment, please. I examined Mr. Rich myself, and I must insist that the assistant attorney general shall look up the record and either affirm or correct this statement. Because it is entirely wrong. And I must insist that in fairness he either affirm or deny it on the record.

"*The Court:* If Mr. Smith misquotes his testimony, as I say, he does so at his own peril.

"*Mr. Barnard:* May it please the court, I want in the record this, that Mr. E. C. Smith examined Arthur Rich, and drew out all of those arrests on direct-examination, not only the arrest at Gull lake but over at Brighton, and twice for speeding in California, and I challenge this record.

"*Mr. O. L. Smith:* That is true—no one has said that it was not true, but when he knew, gentlemen, that I did have a certified copy of his arrest and conviction over here in Livingston county then I say to you that he answered counsel, Mr. E. C. Smith, that he had been arrested more than once and he swore under oath at Battle Creek—and he is not, gentlemen, entirely unintelligent because he has been to Olivet college, he was a graduate of a high school, and he had attended the University of Michigan, and he knew plain English when Mr. Cortright had said to him 'were you ever arrested anywhere else?' and he said no.

"Oh, gentlemen, they smelled a mouse."

This argument is not justified by this record. Defendant, on examination by his own counsel, had admitted his arrest in Livingston county. He had not testified to it on the first trial. There is nothing

in the record tending in any way to establish that the
assistant attorney general showed defendant any ex-
hibit or that he had, or produced on the trial any
certified copy of any arrest record or any court pro-
ceedings.    The argument was improper.    In the
people's brief it is sought to justify this argument by
photostatic copies of papers which counsel claims he
had in his possession.    This likewise was improper.
The bill of exceptions may not be enlarged by counsel's
statements in the brief.    *In re Marx's Estate,* 201
Mich. 504.    The argument was erroneous.    Was it
cured by the charge of the court?    I think it was.
Repeatedly the jury was instructed that they must
decide the case upon the evidence; that they must de-
cide the case on the evidence alone; that they must
find the facts from the evidence and take the law
from the court.    We must assume the jury followed
the instructions of the court.    *People* v. *Fenner,* 217
Mich. 239.    The case was not a close one on the facts,
and the erroneous argument dealt with an inconse-
quential subject.

The other assignment of error on this branch of
the case involves the argument that defendant had
failed to call certain witnesses.    While the prosecut-
ing counsel may not comment on defendant's failure to
take the stand if he so elects, he may comment on
his failure to call witnesses.    *People* v. *McGarry,* 136
Mich. 316; *People* v. *Smith,* 106 Mich. 431; *People* v.
*Thompson,* 221 Mich. 621.

Defendant preferred, among others, the following
request:

"If the jury believed from the evidence that at the
time the offense is alleged to have been committed,
the prosecuting witness made no outcry, and was in
a position to have made an outcry, or could have made
others hear who were in close proximity, then you
should take this circumstance into consideration with
all of the other evidence in determining the guilt or

innocence of the respondent, and whether a rape was in fact committed or not."

This request was not given in language or substance. Upon the argument it was conceded by counsel for the people, and properly so, that the request stated the law and should have been given either in language or in substance. This renders unnecessary a citation of numerous cases and the work of textwriters on the subject, all of which agree that in prosecutions for common-law rape, where the pivotal question is whether the act was with the consent of the prosecutrix or not, failure to make outcry, where others are in the vicinity and outcry would be available, should be considered in determining the question of consent or nonconsent. We quote from but one authority, as it correctly states the rule. In 22 R. C. L. p. 1187, it is said:

"In prosecutions for rape the best of judges of ancient and modern times have laid down certain tests by which to be governed in ascertaining the truthfulness of the party preferring the charge. They concur in saying that her evidence should be carefully considered in connection with the circumstances in determining whether she consented to the act, or whether as she testifies it was without her consent. Proof of the failure of the female to make any outcry tends to show that she consented to the intercourse, but if the transaction occurs at a place so remote from all human help that all outcry must be unavailing, it has been held that outcry need not be made, as the law does not require the doing of impossible or useless acts."

In the people's brief it was insisted that this request was covered by the following instruction:

"*In determining her power to resist* you must take into consideration all the facts connected with the time and place at which the act of intercourse took place; her physical powers at that time, the resistance she was able to make, her ability to summon help, in any way in her power, by screaming or otherwise. You

are to consider all these things from the evidence that has been brought before you."

This is the only occasion the subject of outcry is mentioned in the charge. Upon the argument, we called attention of counsel to the words we have italicized and which limited the consideration of the jury upon the question of outcry to the one question of power of resistance. While counsel was unwilling to concede that the instructions did not cover the request, he frankly stated that he would have made no objection to the request being given had it been called to his attention, and does not claim that it is covered unless covered by the language quoted. By italicizing the words in the charge as given, it is made patent that the substance of this request was not given.

The industry of counsel has brought to our attention no case where a similar request was refused. In the time at our disposal, and we have been reasonably diligent, we have found but six such cases. In *Eberhart* v. *State*, 134 Ind. 651 (34 N. E. 637), the prosecutrix was an epileptic, just above the age of consent. The defendant was an itinerant "charm" doctor who was treating her for her ailment. He persuaded her parents, ignorant and credulous people, that he should administer to her during the nighttime, and was permitted to occupy a room with her. He gained their confidence and hers. The fifth night they occupied the same room, he called her to his bed saying he had something to tell her that would cure her fits. She went to his bed and they indulged in sexual intercourse. It was held that, under these circumstances, an instruction on the question of outcry was inappropriate and was properly refused. In *Quinn* v. *State*, 153 Wis. 573 (142 N. W. 510, 46 L. R. A. [N. S.] 422), the prosecutrix was plied with liquor by defendant until she was in a "mental stupor from alcoholic drink which made her insensible and incapable of consenting." It was held that, "under the evidence of

Agnes Secquist's condition," an instruction on outcry was immaterial and its refusal deprived defendant of no right.    In *Thomas* v. *State* (Tex.), 70 S. W. 93, a request that the failure to make outcry should be considered on the question of the credibility of prosecutrix was held to be properly refused as being "a charge on the weight of the evidence."    And the same court, in *Moore* v. *State*, 90 Tex. Cr. App. 604 (236 S. W. 477), had before it a similar request in a case of statutory rape where consent was not an element. It was held that the request was properly refused on the ground that

"The doctrine of prompt outcry and report does not apply to rape with consent in 'under age' cases as it does to rape by force."

In *Barney* v. *People*, 22 Ill. 160, the request was as follows:

"If the jury believe, from the evidence, that the husband of the prosecutrix was, at the time the rape is alleged by her to have been committed, an ablebodied man, and was at the said time within a few rods of the said place, where the rape is alleged by her to have been committed, that he might easily have heard her had she made any outcry; that the prosecutrix made no outcry; that she and her husband remained for an hour or an hour and a half with the defendant, in a friendly manner, then these circumstances raise a strong presumption that no rape was committed."

It was held to be error to refuse this instruction and the case was reversed.    In *State* v. *Witten*, 100 Mo. 525 (13 S. W. 871), the following request was preferred:

"If the jury believe, from the evidence, that at the time the offense is alleged to have been committed, the prosecuting witness made no outcry and did not, as soon as an opportunity offered, complain of the offense to others, but concealed it for a considerable length of time thereafter, then the jury should take this cir-

cumstance into consideration with all the other evidence in determining the guilt or innocence of the defendant and whether, in fact, a rape was committed or not."

The court said:

"This instruction should have been given. A concealment of the injury for any considerable time after the woman has had an opportunity to complain, and a failure on her part to make any outcry, where the act is committed within the probable hearing of other persons, are circumstances which will justify a strong, but not conclusive, inference that the act was with her consent, and not by force."

There may be other cases where the trial judge has refused such requests but we have not found them and they have not been called to our attention. In but two of these cases, the Illinois and Missouri cases, was the precise question involved that is here involved. This paucity of cases is no doubt due to the fact that the law is so well settled that instructions on the question of outcry and immediate complaint are usually given whether requested or not. No case, so far as we have been able to find, has heretofore reached this court where such request has been refused. This court has uniformly held that parties are entitled to have their cases submitted to the jury upon the theories advanced by them which are justified by the evidence, and are entitled to instructions appropriate to such theories. I quote from a few of such cases:

"The plaintiff was entitled to a charge applicable to the theory he contended for and which his evidence tended to support, and the instruction which was refused should therefore have been given." *Comstock* v. *Norton*, 36 Mich. 277.

"The refusal to give a request to charge, where there is evidence in the case to support it, is erroneous, unless it is fairly covered by the general charge." *Carrel* v. *Kalamazoo Cold-Storage Co.*, 112 Mich. 34.

"Where the substance of proper requests to charge

is not given in the general charge, their refusal is error." *People* v. *Jacks*, 76 Mich. 218.

"The charge of the court was too general. The general propositions of law are not questioned, but defendant was entitled to a specific charge, hypothetically stated, of his theory upon this branch of the case which was supported by evidence." *Slater* v. *Walter*, 148 Mich. 650.

"Where there is testimony tending to support the theory upon which a party has tried his case, it is error to refuse to instruct the jury upon such theory, unless the instruction asked for is covered by the general charge." *Cooper* v. *Mulder*, 74 Mich. 374.

"In *Sword* v. *Keith*, 31 Mich. 247, it was held that a party is entitled to have specific charges upon the law applicable to each of the various hypotheses or combinations of facts which the jury, from the evidence, might legitimately find, and which have not been covered by other instructions. This rule has been followed in a multitude of cases. Indeed, it has been reiterated in almost every volume of our reports." *People* v. *Parsons*, 105 Mich. 177.

See, also, *McClay* v. *Hicks*, 119 Mich. 65; *Miller* v. *Miller*, 97 Mich. 151; *Winchester* v. *King*, 46 Mich. 102; *Walsh* v. *Taitt*, 142 Mich. 127; *Ludlow* v. *Pearl's Estate*, 55 Mich. 312; *People* v. *Cummins*, 47 Mich. 334. So it will be seen that in an action of trespass involving but nominal damages, six cents, a party has a right to have instructions given the jury covering the law upon his theory if it is supported by the evidence, and refusal to so instruct is error. I think this young man, now serving a life sentence, likewise had such right and that it was a substantial one. Not only the testimony of the defendant, but also that of the people, established the close proximity of Mr. Baker and Miss Reasoner to the scene of the assault. They were seated in the automobile, and it was so quiet that they heard the lapping of the waves on the shores of Goguac lake beyond the scene of the assault. Manifestly, prosecutrix could make no outcry after

being beaten into insensibility, but she testifies to their struggles while they were standing up and after defendant threw her upon the ground.     Upon her testimony she had opportunity to make outcry before the first blow was struck.     She explains her reason for not making outcry, which if we were the triers of the facts might be of appealing force.     But defendant denied her testimony *in toto,* and it was for the jury, under proper instructions, to find the facts.

Counsel for the people are in error in saying, in the opening heading of their brief:

"The real question in this case is, 'Should the respondent in this case have been convicted?' "

The "real" question, and the only question for this court, sitting as a reviewing court, is whether there is reversible error on the record before us.     If so, there must be a reversal; if not, there must be an affirmance.     It is the boast of our people, and one of the tenets of our institutions, that the meanest of our citizens is secured a fair and impartial trial in accordance with the Constitution and laws; that he is entitled to be tried in "accordance with the law of the land."     We are not only deciding this case, but we are also laying down rules for the guidance of the judiciary and the profession in future cases.     For two and a half centuries the courts have quoted and heeded the language of Sir Matthew Hale, who, speaking of the crime of rape, said (1 Hale's Pleas of the Crown, 635) :

"But it must be remembered that it is an accusation easily to be made and hard to be proved, and harder to be defended by the party accused, tho never so innocent."

This is as true today as it was two and a half centuries ago.     Courts never have and never should lay down rules for trial of cases involving this crime,

237—Mich.—32.

particularly, which will insure convictions of all *charged* with the commission thereof be they ever so innocent. The request here under consideration was in accordance with the law as laid down by all the textwriters and all the cases. It went to the crucial, the pivotal question in the case, *i. e.*, that of consent. It should have been given. It will not do to say that the jury understood the legal effect of want of outcry. In cases too numerous to be cited we have held that occurrences upon the trial which were erroneous were cured by instruction that the jury must decide the case on the evidence alone, because we are bound to assume that the jury followed the instructions of the court. Here the court, as is usual and as is proper, charged the jury that they must take the law from the court. We are likewise bound to assume that the jury took the law of the case, and only law of the case, from the court. The law of the case, as given by the court, omitted instruction on a vital question in the case, which omission can not be overlooked.

Defendant preferred 36 requests, some of them dealing further with the question we have just discussed. Except those dealing with this question, such of them as defendant was entitled to were covered by the charge as given. We need not detail them. Error is also assigned on numerous excerpts of the charge but we think these assignments of error are without merit.

Error is assigned upon the refusal of the court to grant defendant an opportunity to file exceptions before sentence. But this question has become academic. A bill of exceptions has been settled, writ of error issued and the case heard on error. Obviously, we could not reverse the conviction for the refusal of the trial court to extend time to file exceptions, even though it should have been granted. We, therefore, decline to consider the question. It is insisted that the

sentence is excessive; it is the extreme limit but it was within the power of the court to impose it. The claim that it is excessive should be addressed to the executive, not to this court.

A motion for a new trial was made based on the fact that two of the witnesses for the people had given testimony on a so-called "one-man grand jury" hearing contradictory to that given on the trial. This testimony had not come to the knowledge of defendant or his counsel until after the trial. The trial judge overruled the motion and we are not prepared to say that such ruling was erroneous.

This opinion has grown to unusual proportions. I have attempted to consider all questions raised which merit discussion. Such of the assignments of error as I have not considered, in my judgment, are without merit.

I think the case should be reversed for the error pointed out, and a new trial granted.

BIRD, WIEST, and MCDONALD, JJ., concurred with FELLOWS, J.

SHARPE, J. I concede that the request preferred by defendant's counsel relating to outcry, quoted by Mr. Justice FELLOWS, should have been given, but, in my opinion, the omission to give it does not warrant the granting of a new trial.

The defendant admitted the act of intercourse. There was, then, but one issue for the jury to pass upon—the use of force. That the burden was on the people to establish this was stated to them in no uncertain terms. They were instructed:

"In order to constitute the crime of rape, the law requires that the female shall resist throughout the assault and until the act is consummated in every way and to the utmost of her ability, even to the extent of making a counter-attack on her assailant if it is possible for her to do so.

"To warrant a conviction of rape in this case each member of the jury must be satisfied from the evidence and beyond a reasonable doubt that respondent had sexual intercourse with Louise King by force and against her will and that on her part there was the utmost resistance to prevent the consummation of this act.    You must find that Louise King's resistance was overcome either by force, violence, or fear.

"The law requires that the female shall resist to the utmost of her ability.    In considering the question of her ability, you have a right to take into consideration, however, her power to resist, as shown by the evidence, because the law does not require her to resist beyond the limits of her power at the time of the assault.    If you find from the evidence that her power to make physical resistance is impaired, either by an assault made upon her by the accused or by the use of liquor, then the law only requires that she resist to the extent of her then present ability to do so."

This was followed by the instruction which we again quote:

"*In determining her power to resist* you must take into consideration all the facts connected with the time and place at which the act of intercourse took place; her physical powers at that time, the resistance she was able to make, her ability to summon help, in any way in her power, by screaming or otherwise.    You are to consider all these things from the evidence that has been brought before you."

Had the words "in determining whether she did resist" been used instead of those italicized in the quotation, I think all would agree that it would then have fairly covered the instruction embodied in the request.

Let us examine the issue as made by the proof on the question of outcry.    It was undisputed that none was heard by the two persons in the car.    The prosecuting witness, when interrogated as to why she made no outcry, after stating that defendant threw her on the ground, testified:

"I was lying on my back and he was kneeling across my knees with one hand on my chest—and he swung his right fist back, I believe, just as he looked towards the car, and the next thing I knew he had hit me just about as hard as anything ever could—and hit me on my left cheek away back here (indicating)—the next I recall I was rather dazed and tried to scream and just could not make any noise, and I was struggling as hard as I could, clawing up at his face—trying to push him away, trying to squirm and get free, but could not. I remember all the time I was struggling I could hear him just talking in short, gasping sentences. I know what he was saying—he was breathing deeply, saying 'You might as well—it won't hurt—no one will know—I am going to, anyhow.'

"Q. That is all you recollect now?

"A. Yes.

"Q. Well, now, to refresh your recollection in that connection, I will ask you whether or not you heard him say anything about putting something on?

"A. Yes, he did.

"Q. You heard that expression, did you?

"A. Yes.

"I know I was just fighting as hard as I could. I said something about his sister—I said I knew that he had a sister, I didn't see how he could act like that; he swore and then he said I was awful dumb.

"I kept on struggling real hard, and for a minute it seemed as if I were going to get away, when he just started to strike me again as hard as he could, and then I was dazed for a while, and then—the last thing I can remember was that I thought he was accomplishing his purpose. I knew I could not do a thing. I knew I could not do a thing. I knew I could not move. I was simply powerless."

On cross-examination, she testified that "the only time I screamed was once, and then I said 'The'" (the name of the young man in the car was Theodore), and further:

"No, I could not say how loud it was. I was frightened; I was frightened and was taken entirely by surprise and I can't say how loudly I screamed. I screamed louder than I have been talking here. I

am a normal girl and have a normal voice and when I am around the sanitarium with other girls I can laugh and talk as loud as anybody, I think."

One of the doctors who examined her after her injury testified:

"Her lower jaw was dropped, she evidently could not speak, she didn't speak at all in my office under operation."

The issue was thus raised as to her ability to make an outcry, and it was this fact, doubtless, that caused the trial court to couch the instruction in the language used by him.

The elements of the crime here charged are well known to every adult person. To establish it, there must be an act of intercourse procured by force. If no instruction had been given on the failure to make outcry, I think the ordinary juryman would consider it, when determining whether consent had been given.

The office and purpose of instructions are to enlighten the jury, to aid them in applying the law applicable to the offense charged to the facts as they find them. While counsel have a right to prefer requests, and those preferred should receive the careful attention of the court, the jury are likely to receive much more aid from a terse, connected, and logical statement of the law by the court than if given to them in disconnected instructions in the form prepared by counsel. I do not think that the instruction given was misleading, nor am I impressed, after a careful reading of the record, that any prejudice to the defendant resulted therefrom.

Under our statute (3 Comp. Laws 1915, § 14565), we have no right to reverse—

"on the ground of misdirection of the jury * * * unless, in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice."

This statute may not be invoked where the error affects the substantial rights of the defendant, or deprives him of a fair trial. *People* v. *Rajona,* 208 Mich. 633. But in *People* v. *Williams,* 208 Mich. 586, it was held that the omission to instruct the jury that the burden of proof was on the prosecution did not, under the record presented, constitute reversible error. Other cases in which the statute has been applied to save the verdict are *Montgomery* v. *Montgomery's Estate,* 191 Mich. 398; *Barras* v. *Barras,* 192 Mich. 584; *Metcalf* v. *Laundry & Dye Co.,* 215 Mich. 601.

In *People* v. *Tubbs,* 147 Mich. 1, 11 (decided before this statute was enacted), where the charge was murder and self-defense was relied on, the court said to the jury:

"But before you acquit on the ground of self-defense you ought to believe that defendant's cause of apprehension for his father was reasonable. You are to determine from all the evidence whether facts constituting such reasonable cause have been established; and, unless such facts constituting such reasonable cause have been established by the defense in this case, you cannot acquit on the ground of self-defense, but his actions and conduct are to be judged from the circumstances as they appeared to him at the time."

This was clearly error, and this court so held, but refused to order a new trial, saying:

"When the charge is read as a whole, it conclusively appears that the jury could not have been misled by the language complained of."

The judgment is affirmed.

SNOW, STEERE, and CLARK, JJ., concurred with SHARPE, C. J.